# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION



Case Name:   **John St. Pierre v Jefferson River Investors I, LLC**
Case Number:   **218-2021-CV-01240**

Date Complaint Filed: December 15, 2021
A Complaint has been filed against Jefferson River Investors I, LLC in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| January 31, 2022 | John St. Pierre shall have this Summons and the attached Complaint served upon Jefferson River Investors I, LLC by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| February 21, 2022 | John St. Pierre shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Jefferson River Investors I, LLC must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to Jefferson River Investors I, LLC:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| Daniel M. Deschenes, ESQ | Hinckley Allen Snyder LLP 650 Elm St Ste 500 Manchester NH 03101 |
| Owen Robert Graham, ESQ | Hinckley Allen Snyder LLP 28 State St Boston MA  02109 |
| Christopher H.M. Carter, ESQ | Hinckley Allen Snyder LLP 650 Elm St Ste 500 Manchester NH 03101 |
| Jefferson River Investors I, LLC | 1330 Avenue of the Americas New York NY  10019 |

BY ORDER OF THE COURT

December 17, 2021

Jennifer M. Haggar
Clerk of Court

(126564)

NHJB-2678-Se (07/01/2018)

This is a Service Document For Case: 218-2021-CV-01240
Rockingham Superior Court
12/17/2021 10:21 AM

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Rockingham Superior Court
Rockingham Cty Courthouse/PO Box 1258
Kingston NH  03848-1258

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:       **John St. Pierre v Jefferson River Investors I, LLC**
Case Number:     **218-2021-CV-01240**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Rockingham Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Rockingham Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **218-2021-CV-01240** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

Filed
File Date: 12/15/2021 4:20 PM
Rockingham Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

ROCKINGHAM, ss.                                             SUPERIOR COURT

Docket No. 218-2021-CV-01240

John St. Pierre
*Plaintiff*

v.

Jefferson River Investors I, LLC
*Defendant*

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff John St. Pierre, pursuant RSA 491:22, hereby petitions this Court for a declaration that a payment obligation under a certain $900,000 Promissory Note that originally was between St. Pierre and Legacy Global Sports, L.P., and that was assigned to Defendant Jefferson River Investors I, LLC by the Chapter 7 Trustee of the Legacy bankruptcy estate, was not triggered by the bankruptcy auction of a portion of Legacy's assets.

## PARTIES

1.      Plaintiff John St. Pierre ("St. Pierre") is a natural person residing at 3 Bradley Lane, North Hampton, New Hampshire, 03861.

2.      Defendant Jefferson River Investors I, LLC ("Jefferson"), upon information and belief, is a Delaware limited liability company with a primary place of business at 1330 Avenue of the Americas, New York, New York, 10019.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to RSA 491:22.

4.      Venue is appropriate in this Court, pursuant to RSA 507:9, because St. Pierre resides in this judicial district.

This is a Service Document For Case: 218-2021-CV-01240
Rockingham Superior Court
12/17/2021 10:21 AM

## FACTUAL BACKGROUND

5.      Prior to its bankruptcy in May 2020, Legacy was a premier youth sports event and management company.  Operating through a number of affiliated companies and divisions each separately focused on a particular sport – including youth hockey, soccer, and lacrosse, among other sports – Legacy provided a broad range of tours, tournaments, camps, and related services in the United States and internationally.

6.      In 2003, St. Pierre co-founded Legacy's predecessor, Selects Sports Management, Inc. ("SSMI").  SSMI provided services to elite youth athletes at youth sporting events throughout North America and Europe.

7.      In or about January 2014, St. Pierre took over as SSMI's CEO and President.  He was instrumental in building SSMI, and later Legacy, into a company that, by 2018, generated annual revenues of approximately $55 million.

8.      On several occasions after January 2014, SSMI, and Legacy, funded the company's growth strategy by conducting capital raises with outside investors.

9.      In early 2016, a venture capital firm, Generation Capital ("GenCap"), invested a total of $5 million in the company at a post-money valuation of $20 million.

10.     In connection with the GenCap investment, SSMI was restructured and three new entities were created: Legacy, a limited partnership; Legacy Global Sports, LLC ("LGS/LLC"), which was Legacy's General Partner; and Legacy Global Sports Holdings, Inc. ("LGS/Holdings"), which was LGS/LLC's sole Member.  LGS/Holdings was 100% owned by SSMI, and the original owners of SSMI (including St. Pierre) retained their equity stake in that company.

2

11.     Immediately prior to the GenCap investment, St. Pierre held a 10.74% interest in SSMI.  To ensure that St. Pierre's interest was not diluted by the $5 million capital raise, and to incentivize St. Pierre to stay on as CEO and President, the company's majority owners agreed to provide St. Pierre an executive equity package in the form of an equity buy back from other owners.

12.     Under the executive equity package, Legacy loaned St. Pierre $900,000 for the purchase of membership units from other owners, so that his total interest in following the GenCap investment would be 12.56% (St. Pierre's interest would have been diluted to 8.06% without the executive equity package).  The package was structured so that St. Pierre would not have any repayment obligation under the loan unless or until a future sale or acquisition occurred which enabled St. Pierre to sell his interest in the company for value.

13.     On March 4, 2016, St. Pierre signed a Promissory Note (the "Note") for the loan of $900,000.  See **Exhibit 1** (3/4/16 Promissory Note).

14.     As stated in the Note, as of March 4, 2016, St. Pierre resided in North Hampton, New Hampshire, and Legacy's principal place of business was in Portsmouth, New Hampshire.

15.     Under the Note, St. Pierre has no repayment obligation unless or until one of two events occurs: (a) "any sale of 90 percent of [Legacy's] partnership interest to a bona fide third party purchaser for value," or (b) "the sale of all or ***substantially all assets of [Legacy] to a bona fide third party purchaser for value***." Id.  (Emphasis added.)  Upon the occurrence of one of these events, outstanding principal and accrued interest (at a rate of 2.53% interest per annum) is due with 90 days; however, if the principal is paid in full when due, any interest accrued "shall be forgiven and deemed paid in full."

3

16.     In April 2018, Legacy conducted a second capital raise and closed on a $19 million growth equity round.  Of this amount, St. Pierre invested $500,000 of his own money while Jefferson invested $16.5 million to acquire a 35.3% interest in Legacy (based on a post-money valuation of $45 million).

17.     Within six months of its investment, Jefferson used its control over Legacy's seven-member Board of Members, and its control over the company's management, to freeze St. Pierre out of the company.  In November 2018, the Jefferson-controlled Board terminated St. Pierre as President and CEO, and eliminated St. Pierre's seat on the Legacy Board.  Then, in February 2019, Legacy, while under Jefferson's control, filed a lawsuit against St. Pierre and others in Rockingham County Superior Court, in the matter styled <u>Legacy Global Sports, L.P. v. John St. Pierre et al.</u>, Docket No. 218-0219-CV-00198 (the "Legacy Litigation"). Legacy asserted unfounded claims that St. Pierre had breached his duty of loyalty to the company.  St. Pierre, in turn, filed counterclaims for, inter alia, wrongful termination, breach of contract, fraudulent inducement, corporate freeze-out/breach of fiduciary duty, and contractual indemnification under the Legacy limited partnership agreement for costs and attorney's fees incurred in defending against Legacy's unfounded claims in the Legacy Litigation.

18.     Legacy's operations continued during the pendency of the Legacy Litigation. Despite actions taken by the Jefferson-controlled Board which vastly increased the company's overhead and expenses, Legacy's revenues in each 2018 and 2019 were maintained at approximately $55 million, while sales and general administrative expenses increased by $18 million.  The huge increase in year-over-year overhead expenditures depleted all resources from the 2018 capital raise and left Legacy in state of financial turmoil by the end of 2019.

19.     The onset of the COVID-19 pandemic in March 2020 disrupted Legacy's business.  However, the company and its assets remained valuable.  In or about April 2020, St. Pierre offered $4 million to purchase just one component of the company's business, its hockey division.  Jefferson, which then controlled Legacy's Board, rejected the offer, alleging it "grossly" undervalued that asset.  Upon information and belief, at or around the same time period, Jefferson also rejected a separate offer from a Chicago-based company to purchase Legacy's hockey business for an amount between $6 million - $7 million.

20.     On May 20, 2020, after Jefferson had caused Legacy to both stop paying its vendors, and to withhold refunds for customers for tours that had been cancelled, creditors of Legacy filed an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

21.     As a result of the involuntary petition, on June 16, 2020, the Superior Court issued an order staying the Legacy Litigation.  The Legacy Litigation has remained stayed, such that St. Pierre has not been able to pursue recovery under his counterclaims against the company.

22.     On June 23, 2020, the Bankruptcy Court entered an order of relief against Legacy. Thereafter, the Trustee was appointed Chapter 7 trustee of the bankruptcy estates of Legacy and its affiliated companies.

23.     On September 21, 2020, St. Pierre filed a proof of claim in the Legacy bankruptcy, asserting unsecured claims for damages recoverable under his counterclaims in the Legacy Litigation, including: $742,000 under the counterclaim for indemnification under the Legacy limited partnership agreement (said $742,000 representing the attorney's fees St. Pierre had incurred as of that date in the Legacy Litigation); and $570,000 under the counterclaim for

wrongful termination.  The proof of claim noted that St. Pierre's other counterclaims sought damages that were as yet unliquidated.

24.     On August 21, 2020, the Trustee filed a motion with the Bankruptcy Court (the "Motion") to request authorization to sell certain Legacy assets (the "Assets") by on-line public auction.  See **Exhibit 2** (8/21/20 Motion).  Appended to the Motion were seven schedules (Schedules 1-7) that listed many (but not all) of the Assets to be auctioned, as follows:

> Schedule 1 – Trade Names/Other Names Under Which Business is Transacted
>
> Schedule 2 – Domain Names
>
> Schedule 3 – Social Media Accounts
>
> Schedule 4 – Goodwill and Intangibles
>
> Schedule 5 – Non-Residential Real Property Leases & Executory Contracts
>
> Schedule 6 – Legacy Global Sports Computers
>
> Schedule 7 – Vehicles

25.     In the Motion, the Trustee further described the Assets, to include the items listed in Schedules 1-7, and additional items, as follows:

> (i)     intellectual property, trade names and trade secrets, including the trade names set forth on the attached Schedule 1;
>
> (ii)    domain names, including those set forth on the attached Schedule 2;
>
> (iii)   social media accounts, related internet pages, content and contact/subscriber lists, and any related social media assets, including those set forth on Schedule 3;
>
> (iv)    goodwill and other intangibles, including those set forth on the attached Schedule 4;
>
> (v)     interests in domestic and foreign non-debtor entities, including LGS's Swedish subsidiary, LGS Europe, AB ("LGS Europe");
>
> (vi)    accounts receivable and prepaid expenses;
>
> (vii)   licenses, permits and other approvals;

(viii)   executory contracts and unexpired leases, including those set forth on Schedule 5;

(ix)   customer lists, customer communications, and marketing information including personally identifiable information defined pursuant to 11 U.S.C. § 101(41A) in accordance with the Debtors' privacy policies to the extent permitted by the Bankruptcy Court;

(x)   computers, including those set forth on Schedule 6;

(xi)   vehicles, wherever located, including those set forth on the attached Schedule 7;

(xii)   various hockey equipment, apparel, signs and marketing material located at A-Verdi Storage Containers, 14150 Route 31, Savannah, NY13146 and at Life Storage, 6467 Main Street, Buffalo, NY 14221;

(xiii)   various lacrosse equipment, apparel, signs and marketing material located at Cubesmart Cube F51, 307 East Hanover, NJ 07960; and

(xiv)   rights relating to the enforcement or protection of any of the purchased Assets.

26.   Initially, Jefferson, which then was firmly in control of Legacy, did not disclose to the Trustee that the company's assets included a "PFE Housing Booking Platform," which was used to book tours and other programs.  The Platform was added to the list of Legacy's assets only after St. Pierre informed the Trustee of the Platform's existence.

27.   On October 1, 2020, the Trustee conducted the on-line auction.  On January 28, 2021, the Trustee reported to the Bankruptcy Court that the auction had resulted in the sale of only three Assets, for a collective amount of only $407,000.  **Exhibit 3** (1/28/21 Motion For Order Authorizing Payment to Auctioneer), at p. 3.  According to the Trustee, those three Assets, and the price paid for each, were as follows:

a.   Legacy's interest in LGS Europe AB, for $30,000;

b.   The PSE Housing Booking Platform, for $370,000;

c.   19 laptops and desk tops, for $7,000.

28.     All told, of the 429 items that the Trustee identified as comprising Legacy's Assets, only 21 items (representing 4.9% of the total), were sold.

29.     In the weeks and months immediately preceding October 1, 2020, the Trustee did not allege that the auction triggered a payment obligation under the Note.  If a payment obligation had been triggered (which did not occur), payment would have been due no later than 90 days after the auction.  On or about January 1, 2021, the 90 day milestone passed without any allegation by the Trustee that St. Pierre was in default.

30.     In the January 28 report to the Bankruptcy Court, the Trust represented he was "exploring a second auction or a private sale with respect to the unsold assets," and also was considering "abandoning" other Assets, namely, the vehicles references in Schedule 7 to the Motion.  Id. at 3-4.  No other auction was conducted and, upon information and belief, none of Legacy's other Assets was sold.

31.     More than seven months after the auction, by letter dated June 14, 2021, the Trust first demanded that St. Pierre make payment under the Note.  In the letter, the Trustee alleged that "[o]n October 1, 2020, substantially all of the assets of Legacy Sports were sold."  See **Exhibit 4** (6/14/21 letter).  This was inaccurate, as the Trustee conceded to the Bankruptcy Court on January 28, 2021.  Furthermore, despite having made no prior payment demand, the Trustee alleged St. Pierre "failed and neglected to pay in full the principal and interest due thereon," and that St. Pierre therefore was liable for "the outstanding principal balance of $900,000 plus accrued interest from and after March 4, 2016."  Id.

32.     On July 20, 2021, St. Pierre responded to the Trustee's demand.  See **Exhibit 5** (7/20/21 letter).  St. Pierre asserted that a repayment obligation under the Note had not been

triggered because the Trustee had not sold substantially all of Legacy's assets to a bona fide third party purchaser for value.

33.     Even had a payment obligation under the Note been triggered, any amount that St. Pierre owed to Legacy would be offset by Legacy's liability to St. Pierre under counterclaims asserted by him in the Legacy Litigation, which remains stayed.

34.     On July 20, 2021 (the same day that St. Pierre responded to the Trustee's demand under the Note), the Trustee filed a motion in the Bankruptcy Court seeking approval of a stipulated settlement between the Trustee and Jefferson.  The settlement provided, inter alia, for the assignment of Legacy's rights under the Note to Jefferson.  The Bankruptcy Court ultimately approved the stipulated settlement, with modifications unrelated to the assignment, in November 2021.

35.     Upon information and belief, Jefferson now intends to pursue St. Pierre for payment of the Note's unpaid principal and accrued interest.

## COUNT I
## DECLARATORY JUDGMENT: TRIGGER OF PAYMENT OBLIGATION

36.     St. Pierre hereby repeats and incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

37.     A present and actual controversy exists between St. Pierre and Jefferson, as the Trustee's assignee, as to whether a payment obligation under the Note has had been triggered.

38.     The sale of a small portion of Legacy's Assets during the October 1, 2020 auction did not constitute the sale of "substantially all" of the Assets, as required under the Note.

39.     Furthermore, the sale of Legacy's Assets through a bankruptcy auction, for a fraction of the Asset's pre-bankruptcy value, did not constitute a sale to a "bona fide third party purchaser for value," as required under the Note.

40.     St. Pierre is entitled to a declaration that a payment obligation under the Note was not triggered by the bankruptcy motion.

## COUNT II
## DECLARATORY JUDGMENT: INTEREST; RIGHTS OF SET OFF

41.     St. Pierre hereby repeats and incorporates by reference the allegations contained in the above paragraphs as though fully set forth herein.

42.     Should the Court determine that a payment obligation under the Note was triggered, a present and actual controversy exists as to whether St. Pierre is liable for interest accrued since March 2016 as alleged by the Trustee.

43.     Furthermore, as Legacy's assignee, Jefferson took assignment of the Note subject to all rights of set-off that St. Pierre held against Legacy at the time of the assignment.

44.     At the time of the assignment, St. Pierre held (and he continues to hold) valid counterclaims against Legacy in the Legacy Litigation, the resolution of which have been stayed due to the Legacy bankruptcy.

45.     As a matter of equity, St. Pierre is entitled to off-set any amount owed under the Note with the amount of any judgment on his counterclaims in the Legacy Litigation.

46.     Legacy would be a necessary party in proceedings to resolve St. Pierre's counterclaims against Legacy.  Accordingly, for purposes of establishing St. Pierre's set-off rights, the adjudication of the counterclaims would require relief from the automatic stay imposed by the bankruptcy proceedings.

47.      For the above reasons, should the Court ultimately determine that a payment obligation under the Note was triggered, St. Pierre seeks a declaration that his payment obligation should be stayed until St. Pierre's counterclaims against Legacy in the Legacy Litigation are resolved.

WHEREFORE, St. Pierre requests that this Honorable Court:

A.    Declare St. Pierre's repayment obligation under the Note has not been triggered;

B.    Alternatively, declare that St. Pierre is not liable for interest under the Note, and further that any payment obligation under the Note should be stayed pending the resolution of St. Pierre's counterclaims in the Legacy Litigation; and

C.    Order such other and further relief that justice may require.

Respectfully submitted,

JOHN ST. PIERRE

By his attorneys,

Dated:  December 15, 2021

    /s/ *Christopher H.M. Carter*
Christopher H.M. Carter, Esq. (#12452)
Daniel M. Deschenes, Esq. (#14889)
Owen R. Graham, Esq. (#266701)
Hinckley, Allen & Snyder LLP
650 Elm Street, Suite 500
Manchester, NH  03101
Tel: 603-225-4334
ccarter@hinckleyallen.com
ddeschenes@hinckleyallen.com
ograham@hinckleyallen.com

#61500444

11

# EXHIBIT 1

DocuSign Envelope ID: 259227DE-952E-4EC1-8777-68843085C87E

## PROMISSORY NOTE

$900,000.00                                                                     Kennebunk, ME
                                                                                March 4, 2016

FOR VALUE RECEIVED, the Undersigned, **JOHN ST. PIERRE**, of North Hampton, NH (the "Undersigned" or "Maker"), promises to pay to the order of **LEGACY GLOBAL SPORTS, LP**, a Delaware limited partnership having a primary place of business at 99 Bow Street, Suite 100W, Portsmouth, NH 03801 (hereinafter referred to as "Holder") the sum of NINE HUNDRED THOUSAND DOLLARS and 00/100 ($900,000.00), together with interest as provided below, in lawful money of The United States of America.

Interest shall be calculated on an annual basis on the unpaid balance outstanding from time to time. Commencing upon the date hereof and continuing until all Principal and Interest has been paid in full, the Interest Rate shall equal the Adjusted Long Term Rate of 2.53% per annum and accrue from the date hereof until all Principal and Interest has been paid in full, but provided, however, that so long as the note is paid in full when due that any such interest accrued shall be forgiven and deemed paid in full.

The outstanding principal balance plus any accrued interest shall be due and payable within 90 days after any sale of 90 percent of Holder's partnership interest to a bona fide third party purchaser for value, regardless of whether such purchaser is a minority limited partner, or the sale of all or substantially all assets of the Holder to a bona fide third party purchaser for value. This note shall only be in default in the event that payment is not made within the 90-day post-sale period set forth above. The Undersigned may prepay the principal amount outstanding in whole or in part without penalty. The Undersigned hereby waives presentment, demand, notice, and protest.

If any portion of this Note shall be found invalid or unenforceable, then it shall not thereby affect the validity or enforceability of the remainder hereof. A waiver of any default or late fee shall not constitute a waiver of any subsequent default or defaults.

If any payment of principal or interest hereunder shall be deemed by final order of a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance, then the obligation of the Undersigned and all other parties liable herefor shall, jointly and severally, to the extent thereof, survive as an obligation due hereunder and shall not be discharged by said payment, notwithstanding the return by Holder to Undersigned or any other party of the original of this Note. This Note is subject to the condition that at no time shall the Undersigned be obligated or required to pay interest at a rate which could subject the Holder hereof to either civil or criminal liability, forfeiture or loss of principal, interest, or other sums as a result of being in excess of the maximum interest rate permitted by law. If by the terms of this Note the interest hereunder is at any time in excess of such maximum rate, then the rate of interest shall be deemed to be immediately reduced to such maximum rate for so long as such maximum rate shall be in effect and shall thereafter be payable at the rate herein provided.

DS
JSP

DocuSign Envelope ID: 259227DE-952E-4EC1-8777-68843085C87E

Under no circumstances shall the liability of Holder to the Undersigned exceed the amount of funds advanced pursuant hereto and there is no obligation to advance any further funds. For this purpose, and as an inducement to making this loan, the Undersigned agrees that liability includes any claim, action, cause of action, obligation, cost or expense whether now existing or hereafter arising whatsoever in nature whether related to this Promissory Note or otherwise created.

This Note is being executed and delivered in Maine and shall be governed by and construed in accordance with the laws of the State of Maine, to the maximum extent the parties may so lawfully agree. The Undersigned hereby submits to the jurisdiction of any state or federal court located within Cumberland County or York County in the State of Maine, to the jurisdiction of any state, federal or other court of the United States of America, the State of Maine, or any other state, district, commonwealth, territory, county, province, or country in which assets owned by the Undersigned are or may be located (including jointly with others).

IT IS MUTUALLY AGREED BY HOLDER AND THE UNDERSIGNED THAT HOLDER AND THE UNDERSIGNED SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, COUNTERCLAIM, OBJECTION TO CLAIM IN A BANKRUPTCY CASE, OR OTHER LITIGATION OF ANY TYPE BROUGHT BY HOLDER OR THE UNDERSIGNED AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF, RELATED TO, OR IN ANY WAY CONNECTED WITH THIS NOTE AND/OR THE TRANSACTIONS OR DOCUMENTS CONTEMPLATED HEREBY. Without in any way limiting the scope or effect of the foregoing waiver of the jury trial right, Holder and the Undersigned specifically agree that such waiver shall be effective in any action arising out of or related to: (A) any alleged oral promise or commitment by Holder, (B) any alleged modification or amendment of this Note and/or the transactions or documents contemplated hereby, whether in writing, oral, or by alleged conduct; (C) any enforcement of this Note and/or the transactions or documents contemplated hereby, and (D) any repossession, taking of possession, or disposition of collateral securing the indebtedness evidenced by this Note and/or the transactions or documents contemplated hereby. Without in any way limiting the foregoing, Holder and the Undersigned further agree that their respective rights to a trial by jury are waived by operation of this paragraph as to any action, counterclaim, or other proceeding which seeks, in whole or in part, to challenge the validity or enforceability of this Note and/or the transactions or documents contemplated hereby or any provision thereof. Holder shall be bound by this paragraph upon its acceptance of this Note.

DocuSigned by:

60EA33305FCF4B8...

Witness

DocuSigned by:

John St. Pierre

EE8750CEBB804EB...

John St. Pierre

2

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>LEGACY GLOBAL SPORTS, L.P.,[1]<br><br>Debtor. | Chapter 7<br>Case No. 20-11157-JEB; and<br>20-11351 through 20-11376<br>*Jointly Administered Cases* |

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ASSETS OF DEBTORS BY ONLINE PUBLIC AUCTION SALE FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

To the Honorable Janet E. Bostwick, United States Bankruptcy Judge:

In accordance with 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 2002

and 6004, and Massachusetts Local Bankruptcy Rule 6004-1, Harold B. Murphy, the Chapter 7

trustee (the "Trustee") of the bankruptcy estates (the "Estates") of Legacy Global Sport, LP

("LGS") and each of the above-captioned related chapter 7 debtors (collectively, the "Debtors"),

respectfully moves for entry of an order authorizing him to sell by public online auction sale (the

"Public Sale") the Estates' right, title and interest in all or substantially all of the Estates' assets,

properties and rights, other than the Excluded Assets (defined below), of every kind, nature,

character and description, whether personal or mixed, whether tangible or intangible, whether

---

[1] The affiliated debtors, along with the last four digits of each debtor's federal tax identification number, are as follows: (i) Legacy Global Sports, L.P., EIN #2834; (ii) LGS Management, LLC, EIN # 5401; (iii) LGS Manufacturing LLC, EIN #5305; (iv) Legacy Global Lacrosse LLC, EIN # 0161; (v) LGS Logistics LLC, EIN #6244; (vi) LGS Team Sales LLC, EIN # 644; (vii) Premier Sports Events LLC, EIN #5407; (viii) Massachusetts Premier Soccer LLC d/b/a Global Premier Soccer, EIN # 6290; (ix) Maine Premier Soccer LLC, EIN #0740; (x) Mass Premier Soccer in New Hampshire, LLC, EIN #2958; (xi) Florida Premier Soccer LLC, EIN #0702; (xii) New York Premier Soccer LLC, EIN # 27-2451104; (xiii) Jersey Premier Soccer LLC, EIN # 0501; (xiv) GPS in Vermont LLC, EIN #3359; (xv) Rhode Island Premier Soccer LLC, EIN #2841; (xvi) Carolina Premier Soccer LLC, EIN # 46-1594047; (xvii) Georgia Premier Soccer LLC, EIN #1982; (xviii) Global Premier Soccer Puerto Rico LLC, EIN #1857; (xix) Global Premier Soccer Canada LLC, EIN # 6291; (xx) Global Premier Soccer Oregon, LLC, EIN #8242; (xxi) Global Premier Soccer California LLC, EIN #7811; (xxii) Global Premier Soccer Missouri, LLC, EIN #2782; (xxiii) Global Premier Soccer Connecticut, EIN # 6400; (xxiv) Global Premier Soccer Delaware, EIN # 4703; (xxv) Global Premier Soccer Michigan LLC, EIN # 0533; (xxvi) Global Premier Soccer Minnesota LLC, EIN # 5588; and (xxvii) Global Premier Soccer Ohio LLC, EIN #0022.

accrued, contingent or otherwise and wherever located, free and clear of all liens, claims,

encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the

proceeds of the sale.

The Trustee will offer for sale executory contracts and unexpired leases in which the

Debtors may have an interest, to be assumed and assigned to a buyer or buyers in connection with

the Public Sale. To the extent that the Trustee accepts an offer for one or more executory contracts

or unexpired leases, the Trustee will seek authority to assume and assign such contracts and leases

following the Public Sale. Purchasers will be responsible for paying the cure costs associated with

the assumption and assignment and providing adequate assurance of future performance under the

agreement to the counter party pursuant to 11 U.S.C. § 365.

The Public Sale of the Assets shall occur on the terms and conditions set forth in this motion

(the "Sale Motion") and in the proposed *Notice of Intended Online Public Auction Sale of Assets,*

*Deadline for Objections, and Final Hearing on Motion By Chapter 7 Trustee For Entry of Order*

*Authorizing the Sale of Assets by Online Public Auction Sale, Free and Clear of Liens, Claims,*

*Encumbrances and Interests* (the "Notice") attached hereto as Exhibit A. Pursuant to the proposed

terms of the sale, the Trustee, at his sole discretion, may offer the Assets for sale in the entirety, in

various combinations, and individually. The offer or offers accepted by the Trustee will be the offer

or combination of offers that provide the greatest benefit to the Estates.

**The Trustee has scheduled an online Public Sale to commence on October 1, 2020 at**

**11:00 a.m.  Details of the online Public Sale, including with respect to registration and**

**eligibility to participate in the Public Sale, will be made available at www.pesco.com.**  In

further support of this motion, the Trustee states as follows:

## BACKGROUND

1.       On May 20, 2020, certain creditors (the "Petitioning Creditors") filed an involuntary

petition for relief against LGS under Chapter 7 of the United States Bankruptcy Code ("Bankruptcy

Code"), and an order for relief was entered against LGS on June 23, 2020.

2.       On June 23, 3030, each of the remaining Debtors filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code.

3.       The Trustee is the duly appointed Chapter 7 Trustee of the Estates.

4.       According to the LGS website www.legacyglobalsports.com, LGS was "a premier

youth sports event and management company with a full suite of tours, tournaments, camps and

services across the globe. LGS is the team behind some of the worlds' most successful youth sports

programs and events, including Global Premier Soccer, Selects Hockey, T3 Lacrosse, World Selects

Invitational, National Lacrosse Classic, Motown Classic and much more."

www.legacyglobalsports.com.

5.       The services provided by LGS included event and tournament management services,

international tours for athletes and their families, and housing for tournament participants.

www.legacyglobalsports.com/services.

6.       An example of the tournaments run by LGS is the World Selects Invitational.  The

LGS' Official Program Book for the 2017 World Selects Invitational ("WSI") indicates that in

2017, it ran its 8th year of hockey tournaments for 150 teams in eight age groups, both male and

female, in five cities: Balzano, Italy, Prague, Czech Republic, Mont Blanc Region, Dresden

Germany, and Philadelphia, Pennsylvania.  The program book identifies certain WSI tournament

participants who were subsequently drafted to the National Hockey League and to professional

leagues across Europe. www.lgstours.com.

7.     Global Premier Soccer ("GPS"), according to the www.globalpremiersoccer.com
website, was "one of the largest and most successful soccer programs in North America. With
countless club teams across North America, as well as an exclusive partnership with FC Bayern,
GPS has built an international network of talented coaches and players all pushing in the same
direction." GPS offered "more than 45 tournaments across North America, including two major
college showcase events in the GPS Memorial Day Showcase and the GPS Thanksgiving Day
Showcase." www.globalpremiersoccer.com.

8.     A division of GPS, T3 Lacrosse, was "a premier educator of thousands of youth
annually in the sport. Our organization has become a trusted feeder program for middle schools and
high schools throughout New Jersey, Leigh Valley, PA, and Hudson Valley, NY. We start at the
grass roots level at an early age by inspiring a love for the game as well as assist in player
development through the collegiate level. We do this by offering specialized training, recreational
leagues, elite level club team, and a variety of competitive events." https://t3lacrosse.com/about-t3-
lacrosse.

9.     After consulting with his proposed auctioneer, the Trustee has determined to conduct
an online public auction sale for the Assets. Based upon his investigation to date, the Trustee
believes that there is value in the Assets which will inure to the benefit of the Estate and its creditors
and that the proposed Public Sale of the Assets in the best interests of the Estate.

10.    Concurrently herewith, the Trustee has filed an application seeking to employ Paul
E. Saperstein Co., Inc. (the "Auctioneer") as his auctioneer to conduct the Public Sale.

### THE ASSETS

11.    The Debtors' assets include those identified in the Schedules of Assets and
Liabilities and Statement of Financial Affairs filed by the Debtors and as may be identified on the
Auctioneer's website at www.pesco.com, other than the Excluded Assets, and include but are not

limited to all of the Estates' right, title and interest in and to assets, properties and rights of every

kind, nature, character and description, whether personal or mixed, whether tangible or intangible,

whether accrued, contingent or otherwise and wherever located, including the following assets,

properties and rights in which the Debtors may hold a right, title and interest, to the extent

transferable, but not limited to (collectively, the "Assets"):

(i)    intellectual property, trade names and trade secrets, including the trade names set
       forth on the attached Schedule 1;

(ii)   domain names, including those set forth on the attached Schedule 2;

(iii)  social media accounts, related internet pages, content and contact/subscriber lists,
       and any related social media assets, including those set forth on Schedule 3;

(iv)   goodwill and other intangibles, including those set forth on the attached Schedule 4;

(v)    interests in domestic and foreign non-debtor entities, including LGS's Swedish
       subsidiary, LGS Europe, AB ("LGS Europe");

(vi)   accounts receivable and prepaid expenses;

(vii)  licenses, permits and other approvals;

(viii) executory contracts and unexpired leases, including those set forth on Schedule 5;

(ix)   customer lists, customer communications, and marketing information including
       personally identifiable information defined pursuant to 11 U.S.C. § 101(41A) in
       accordance with the Debtors' privacy policies to the extent permitted by the
       Bankruptcy Court;

(x)    computers, including those set forth on Schedule 6;

(xi)   vehicles, wherever located, including those set forth on the attached Schedule 7;

(xii)  various hockey equipment, apparel, signs and marketing material located at A-Verdi
       Storage Containers, 14150 Route 31, Savannah, NY13146 and at Life Storage, 6467
       Main Street, Buffalo, NY 14221;

(xiii) various lacrosse equipment, apparel, signs and marketing material located at
       Cubesmart Cube F51, 307 East Hanover, NJ 07960; and

(xiv)  rights relating to the enforcement or protection of any of the purchased Assets.

12.     **Excluded Assets**.  The Assets do not include (the "Excluded Assets"): (i) cash and

cash equivalents, unless specified by the Trustee; (ii)  amounts due from or claims against Travis

Bezio, John St. Pierre, or other insiders as that term is defined pursuant to 11 U.S.C. § 101(31); (iii)

books and records related to the financial affairs of the Debtors and the hardware associated with

maintaining the Debtors' financial books and records; (iv) books and records related to the

Excluded Assets; (v) the insurance policies, proceeds of insurance, and all of the Estates' rights and

benefits thereunder, including rights to prepaid amounts and proceeds arising from or relating to the

Assets; (vi) tax refunds, tax benefits and tax deposits receivable of the; (vii) employee benefit plans

and all rights in connection with and under the employee benefit plans, (viii) employee personnel

records; (ix) causes of action, judgments, claims, demands, rights of recovery or set-off of whatever

nature, including, without limitation, avoidance actions arising under 11 U.S.C. §§544-551, except

rights relating to the enforcement or protection of any of the purchased Assets; (x) amounts held by

Debtors' payment processor, TSYS, against anticipated charge backs; (xi) personally identifiable

information pursuant to 11 U.S.C. § 101(41A) unless expressly permitted by an order of the

Bankruptcy Court; and (xii) such additional assets as the Trustee may identify and announced prior

to the commencement of the Public Sale.

## Relief Requested

13.     Pursuant to Sections 105 and 363 of the Bankruptcy Code, Federal Rules of

Bankruptcy Procedure 2002 and 6004 and Massachusetts Local Bankruptcy Rule 6004-1, the

Trustee requests authorization to conduct the Public Sale of the Assets.

14.     Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks authority to

sell the Assets free and clear of all liens, claims, interests, and interests and encumbrances at the

Public Sale.  Any and all such liens, claims, interests and encumbrances shall attach to the proceeds

6

of the sale of the Assets, with the same validity, priority and enforceability as existed on the Assets prior to the Public Sale.[2]

15.     To the extent that the Trustee accepts an offer for an executory contract or unexpired lease, the Trustee will seek authority to assume and assign such contracts and leases following the Public Sale in accordance with Sections 363 and 365 of the Bankruptcy Code. Purchasers will be responsible for paying all cure amounts and providing adequate assurance to the counter party in connection with any assumption and assignment of any executory contract and unexpired lease.

16.     Pursuant to Section 363(m) of the Bankruptcy Code, the Trustee seeks a finding that all purchasers any portion of or all of the Assets at the Public Sale are good faith purchasers.

17.     As part of the sale of the Assets, the Trustee seeks authority to transfer personally identifiable information of the Debtors' customers set forth in the databases of the Debtors in accordance with the privacy policy of the Debtors.

18.     The Trustee also seeks authority, should the high bidder for any or all of the Assets fail to close on the sale of the Assets within the time provided by the Trustee following the Public Sale, to sell any of the Assets not purchased to the second highest bidder for the Assets without further Court authority.

19.     **The Trustee has, in consultation with the Auctioneer, scheduled the online Public Sale to commence on October 1, 2020 at 11:00 a.m. Participants will be able to take part in the Public Sale live via the internet. Details of the Public Sale, including with respect to registration and eligibility to participate, will be made available at <u>www.pesco.com</u>. Any parties interested in bidding upon the Assets may contact counsel to the Trustee or the Auctioneer for additional information.**

---

[2] The Trustee continues to investigate any liens or other interest which may encumber the Assets and reserves the right to challenge the validity, priority, and perfection of any asserted lien.

20.     The Trustee requests that the Court approve the terms and conditions of the Public

Sale as set forth in this motion and the Notice, including that the Trustee may withdraw all or any

portion of the Assets from the Public Sale for any reason.

**A.      Approval of the Public Sale of the Assets is Necessary and Warranted**

21.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1).

22.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the

ordinary course may be held by private sale or public auction.  The Trustee has determined that the

online sale of the Assets by the Public Sale is the most cost-efficient means to maximize its value.

23.     The Trustee has conclude in his business judgement, based upon the nature of the

Assets, the current state of the COVID-19 pandemic, the location of likely prospective purchasers

across diverse geographical locations, and the interest of various purchasers in different and

sometimes overlapping portions of the Assets, an auction of the Assets by means of an online Public

Sale is the most effective and efficient means to maximize the value of the Assets.  The Trustee, in

consultation with the Auctioneer, believes that the Public Sale will generate interest from numerous

potential bidders from a variety of geographical locations across the United States and in other

countries.

24.     The Auctioneer intends to publish notice of the Public Sale in local newspapers,

specialty internet sites, and provide additional notice of the Public Sale by mail, email and via the

internet.  The Trustee intends to provide notice to all parties that have expressed an interest in a

portion or all of the Assets, as well as parties that the Trustee and/or the Auctioneer have identified

as potential bidders for the Assets.

25.    The Trustee has determined that the sale of the Assets by Public Sale will enable the

Trustee to obtain the highest and best offers for the Assets and approval of the Public Sale is

therefore warranted.

**B.**    **Sale of Assets Free and Clear of Liens Claims Interests and Encumbrances**

26.    Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free

and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

a.    applicable non-bankruptcy law permits the sale of such
property free and clear of such interest;

b.    the lienholder or claimholder consents;

c.    such interest is a lien and the price at which such property is to
be sold is greater than the aggregate value of all liens on such
property;

d.    such interest is in a bona fide dispute; or

e.    the lienholder or claimholder could be compelled, in a legal or
equitable proceeding, to accept a money satisfaction of such
interest.

27.    In their Schedules of Assets and Liabilities, the Debtors have scheduled Generation

Capital LGS, LP and Jefferson River Investors I, LLC as holders of asserted secured claims against

the Assets. Upon information and belief, these creditors are insiders of the Debtors. The Trustee is

investigating the circumstances forming the basis for any assertion of secured claim status. These

claims are presently the subject of a *bona fide* dispute.  The Assets need to be administered

promptly in order to preserve any value given the circumstances of the liquidation and the potential

for rapid decline in value of the remaining assets, including the loss of value of intangible assets.

28.    A sale free and clear of a disputed interest in a debtor's assets "is expressly permitted

under 11 U.S.C. §364(f)(4)" where the asserted interest is in *bona fide* dispute.  *In re Genesys*

*Research Inst., Inc.*, 2016 B.R. LEXIS 2376 at *65 (Bankr. D. Mass., June 24, 2016) *citing Moldo*

*v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001); *In re Pierce*, 384 B.R. 477 (Bankr.

S.D. Ohio 2008; *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) (internal citations

omitted). A "bona fide dispute" under Section 363(f)(4) means that "there is an objective basis –

either in law or fact – to cast doubt on the validity of" of such asserted interest. *In re Revel AC,*

*Inc.*, 802 F.3d 558, 573 (3d Cir. 2015).

29.     Based upon the foregoing, the Trustee requests, pursuant to Section 363(f) of the

Bankruptcy Code, that the Assets be sold free and clear of any and all liens, claims, encumbrances

and interests. Any liens, claims, encumbrances and interests in and to the Assets shall attached to

the net proceeds of the Public Sale with the same validity, priority and enforceability as existed on

the Assets prior to the Public Sale. Nothing herein shall be deemed to be an acknowledgment by

the Trustee as to the validity priority or enforceability of any asserted liens, claims, encumbrances

or interests.

        **C.**     **Good Faith Protections under Section 363(m)**

30.     Because the Public Sale will effectuate the transfer of the Assets following a public

and transparent sale process, purchasers of the Assets are entitled to the protections of Section

363(m) of the Bankruptcy Code which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)…of
> this section of a sale…of property does not affect the validity of a sale …under such
> authorization to an entity that purchased…such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such authorization and such
> sale…were stayed pending appeal.

11 U.S.C. § 363(m).

31.     Courts have defined a "good faith purchaser" as "one who buys property in good

faith and for value, without knowledge of adverse claims." In re Mark Bell Furniture Warehouse,

Inc., 992 F.2d 7, 8 (1st Cir. 1993). "Good faith" is a lack of "fraud, collusion…or an attempt to take

grossly unfair advantage of other bidders." Id. (citing In re Andy Frain Servs., Inc., 798 F.2d 1113,

1125 (7th Cir. 1986). Due to the absence of a bright line test for good faith, the determination is

based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." In re Tri-Cran, Inc., 98 B.R. 609, 618 (Bankr. D. Mass. 1989) (quoting Rock Indus. Machinery Corp., 572 F.2d at 1198 (7th Cir. 1978)).

32.     The proposed Public Sale is subject to a formal and transparent marketing and sale process during which the Assets will be made available to any prospective purchaser and advertised to attract the most bidders possible prior to the Public Sale. All parties with an interest in the Assets, and as required by Bankruptcy Rule 2002, will receive notice of the Sale and will be provided an opportunity to be heard prior to the proposed sale. The Trustee submits that such notice is adequate and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code. Under the circumstances, the purchasers of the Assets should be afforded the benefits and protections that Section 363(m) of the Bankruptcy Code provides.

### D.     Authority to Assume and Assign Executory Contracts and Unexpired Leases

33.     Subject to court approval, Section 365(a) of the Bankruptcy Code authorizes a debtor-in-possession to assume and assign or reject an executory contract or unexpired lease. *See* 11 U.S.C. § 365(a). The standard for determining whether an executory contract or unexpired lease should be assumed or rejected is the "business judgment" test. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional").

34.     Upon finding that a debtor-in-possession has exercised sound business judgment in determining that the assumption or rejection is in the best interests of its estate, the court should approve the assumption or rejection under Section 365(a) of the Bankruptcy Code. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

35.     Should a purchaser designate one or more executory contracts or unexpired leases (the "Agreements") for assumption and assignment, and the Trustee in his business judgment determines that assumption and assignment is warranted, the Trustee shall request authority to assume any of the Agreements by separate motion with the Court.

36.     To the extent that the Trustee seeks authority to assume any of the Agreements following the Public Sale, the purchaser purchaser shall be responsible for the payment of all cure costs in connection with the assumption and assignment of such Agreements and for providing adequate assurance of future performance under the Agreements. Counter parties to the Agreements will be provided with notice of the Trustee's intent to assume and assign the Assignments and an opportunity to object and to file evidence of the cure amount.

E.      **Transfer of Personally Identifiable Information**

37.     The Public Sale of the Assets may include the transfer of "personally identifiable information" ("PII") as defined in 11 U.S.C. § 101(41A).

38.     The Debtors' policies with respect to its customers is set forth in the privacy policy (the "Privacy Policy") contained on the www.legacyglobalsports.com website.

39.     The Privacy Policy set forth on the website applies to LGS and all subsidiaries and affiliates under common control with LGS. It provides, in relevant part, that information collected about customers when they access the Debtors' websites, mobile applications and other online services that link to the Privacy Policy (the "Sites") as a result of customers' use of the Sites, can be shared "in connection with any merger, sale of assets, financing, bankruptcy, or reorganization…" www.legacyglobalsports.com/privacy/. As such, the Privacy Policy does not prevent the transfer of customer information.

40.     Pursuant to 11 U.S.C. §363(b)(1), as a result of the Privacy Policy, the Trustee may transfer PII related to the Debtors' collection of customer information from its Sites. In order to

further safeguard the PII, the Trustee will not sell PII unless the purchaser (i) agrees to adopt the

Privacy Policy of the Debtors with respect to the use of PII collected from the Sites, and (ii) agrees

to provide notice by first class mail within five (5) days of the entry of a memorandum of sale to

those individuals (the "Affected Persons"), if any, whose PII will be transferred to the purchaser as

a result of the sale.  Under these circumstances, the appointment of a privacy ombudsman pursuant

to 11 U.S.C. § 363(b)(1)(B) is not required.

### The Terms of the Sale and the Public Sale Procedures

41.     The Trustee proposes that the Auctioneer conduct the Public Sale on the terms and

conditions set forth in this Sale Motion and in the Notice.  The proposed terms are designed to

ensure that the Trustee can maximize the value of the Assets for the benefit of the Estates.

42.     The Notice provides, among other things, that the Public Sale will be conducted in

accordance with the following terms and conditions:[3]

- Pursuant to section 363(f) of the Bankruptcy Code, the Assets shall be sold free and clear of any liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests, if any, attaching to the proceeds of such sale to the same extent, validity and priority as they existed on the date of the Public Sale.

- All of the Assets shall be sold and transferred on an "as is, where is" basis without representation or warranty.

- In order to qualify to participate in the Public Sale, bidders are required to, no later than 48 hours in advance of the Public Sale: (i) submit a deposit of $5,000 by wire and (ii) provide written notice to the Auctioneer of the assets to be bid upon.

- The high bidders for any or all of the Assets shall be required to wire the balance of the purchase price no later than 48 hours following the conclusion of the Public Sale.

- The Trustee may, in his sole discretion, offer the Assets for sale in the entirety, in lots of various combinations, and in individual lots.

---

[3] The following discussion represents a summary of the Notice.  In the event of a discrepancy between this summary and the terms of the Notice, the terms of the Notice shall control.

- The Trustee reserves the right to withdraw all or a portion of the Assets from the Public Sale at or prior to the Public Sale.

- The Trustee reserves the right prior to the Public Sale to enter into an agreement for the disposition of a portion or all of the Assets and to sell the Assets by private sale subject to Court approval.

- The Trustee reserves the right to reject, in his sole discretion, any and all bids for all or a portion of the Assets.

- To the extent that the Trustee accepts a bid for all or a portion of the Assets that includes an executory contract or an unexpired lease, the sale shall be subject to Court approval of the Trustee's assumption and assignment of such executory contract or unexpired lease. Bidders shall be responsible for paying cure amounts and providing adequate assurance of future performance to the counter party.

- To the extent that the Trustee does not consummate a sale to the highest bidder for any or all of the Assets for any reason, the Trustee may sell all or a portion of the Assets to the second highest bidder(s) for the Assets in his discretion

- The Trustee, in consultation with the Auctioneer, may, at or before the Public Sale, may impose such other and additional terms and conditions as he determines to be in the best interests of the Trustee, the Estates, its creditors and other parties in interest.

- Additional terms may be announced by the Auctioneer at the time of the Public Sale.

- The Court may take evidence at any hearing on approval of the proposed Public Sale to resolve issues of fact.

- The Court may modify the method of sale set forth herein at or prior to the hearing on the proposed sale.

43.    The Trustee believes that the sale procedures are, under the circumstances, warranted and should be approved.

## Notice

44.    Concurrently herewith, the Trustee has filed a motion seeking to limit the notice of the Sale Motion due to the fact that there are a large number of creditors who are unlikely to participate in the proceedings (the "Motion to Limit"). This Sale Motion and the proposed Notice

will be served upon: (a) the United States Trustee, (b) counsel to the Debtors, (c) the taxing

authorities, (d) the holders of the twenty-five largest scheduled unsecured, non-priority claims listed

on the Debtors' schedules, (e) the Debtors' scheduled secured creditors asserting an interest in the

Debtors' assets, (f) parties who have filed a notice of appearance; and (g) parties who have been

identified as holding an interest in purchasing the Assets (collectively, the "Notice Parties").

45.     Once the Trustee has been provided with an objection deadline and a hearing date,

the Notice will be completed and served upon the Notice Parties.

46.     Given that the Public Sale will be widely advertised, and for reasons set forth in the

Motion to Limit, the Trustee believes that providing notice of the Sale Motion and the Notice to the

Notice Parties is appropriate under the circumstances.

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

a.  Authorizing the sale of the Assets by Public Sale pursuant to the terms set
    forth in this motion;

b.  Approving the terms and conditions of such sale, as provided in the Motion
    herein and in the contemporaneously filed Notice;

c.  Authorizing the Trustee to convey all of right title and interest of the Estate in
    the Assets free and clear of any and all liens, claims, interest and
    encumbrances, with any liens, claims, interests and encumbrances to attach to
    the proceeds of the sale with the same validity, priority and enforceability as
    existed prior to the Public Sale;

d.  Finding that purchasers at the Public Sale are in good faith and entitled to the
    protections of 11 U.S.C. § 363(m);

e.  Determining that notice of the Sale Motion and the Notice to the Notice
    Parties is adequate; and

f.    Providing the Trustee with such other and further relief as is just and proper.

Respectfully submitted,

HAROLD B. MURPHY,
CHAPTER 7 TRUSTEE OF Legacy Global
Sports, L.P., et.al.,

By his counsel,

*/s/ Kathleen R. Cruickshank*
Harold B. Murphy (BBO #362610)
Kathleen R. Cruickshank (BBO #550675)
Murphy & King, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108
Tel:    (617) 423-0400
Email: kcruickshank@murphyking.com

Dated:  August 21, 2020

784311

Case 1:22-cv-00025-PGJ    Document 1-5    Filed 02/03/22    Page 34 of 94

# EXHIBIT A

Case 1:22-cv-10049-PBS    Document 1-1    Filed 01/10/22    Page 35 of 94

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| | )     **Chapter 7** |
| **LEGACY GLOBAL SPORTS, L.P.,**[1] | )     **Case No. 20-11157-JEB; and** |
| | )     **20-11351 through 20-11376** |
| Debtor. | )     *Jointly Administered Cases* |
| | ) |

## NOTICE OF INTENDED ONLINE PUBLIC AUCTION SALE OF ASSETS, DEADLINE FOR OBJECTIONS, AND FINAL HEARING ON MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING THE SALE OF ASSETS BY ONLINE PUBLIC AUCTION SALE, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES

**PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P.

2002(a)(2), 6004, and in accordance with the *Motion By Chapter 7 Trustee For Entry of Order*

*Authorizing Sale of Assets By Public Auction Sale Free And Clear Of Liens, Claims, Interests*

*And Encumbrances* ("Sale Motion"), Harold B. Murphy as he is the Chapter 7 Trustee (the

"Trustee") of the bankruptcy estate (the "Estates") of Legacy Global Sport, LP ("LGS") and each

of the above-captioned related chapter 7 debtors (collectively, the "Debtors"), intends to sell by

public auction sale (the "Public Sale") all of the Estate's right, title and interest in all or

substantially all of the Estates' assets, properties and rights of every kind, nature, character and

---

[1] The affiliated debtors, along with the last four digits of each debtor's federal tax identification number, are as follows: (i) Legacy Global Sports, L.P., EIN #2834; (ii) LGS Management, LLC, EIN # 5401; (iii) LGS Manufacturing LLC, EIN #5305; (iv) Legacy Global Lacrosse LLC, EIN # 0161; (v) LGS Logistics LLC, EIN #6244; (vi) LGS Team Sales LLC, EIN # 6484; (vii) Premier Sports Events LLC, EIN #5407; (viii) Massachusetts Premier Soccer LLC d/b/a Global Premier Soccer, EIN # 6290; (ix) Maine Premier Soccer LLC, EIN #0740; (x) Mass Premier Soccer in New Hampshire, LLC, EIN #2958; (xi) Florida Premier Soccer LLC, EIN #0702; (xii) New York Premier Soccer LLC, EIN # 27-2451104; (xiii) Jersey Premier Soccer LLC, EIN # 0501; (xiv) GPS in Vermont LLC, EIN #3359; (xv) Rhode Island Premier Soccer LLC, EIN #2841; (xvi) Carolina Premier Soccer LLC, EIN # 46-1594047; (xvii) Georgia Premier Soccer LLC, EIN #1982; (xviii) Global Premier Soccer Puerto Rico LLC, EIN #1857; (xix) Global Premier Soccer Canada LLC, EIN # 6291; (xx) Global Premier Soccer Oregon, EIN #8242; (xxi) Global Premier Soccer California LLC, EIN #7811; (xxii) Global Premier Soccer Missouri, LLC, EIN #2782; (xxiii) Global Premier Soccer Connecticut, EIN # 6400; (xxiv) Global Premier Soccer Delaware, EIN # 4703; (xxv) Global Premier Soccer Michigan LLC, EIN # 0533; (xxvi) Global Premier Soccer Minnesota LLC, EIN # 5588; and (xxvii) Global Premier Soccer Ohio LLC, EIN #0022.

Case 1:22-cv-00049-PB   Document 1-1   Filed 02/24/22   Page 36 of 94

description, whether personal or mixed, whether tangible or intangible, whether accrued,

contingent or otherwise and wherever located (collectively, the "Assets"), free and clear of all

liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests

to attach to the proceeds of the sale.

The Trustee also will offer for sale any executory contracts and unexpired leases in which

the Debtors may be a party. Purchasers of executory contracts and unexpired leases will

responsible for paying any cure costs associated with the assumption and assignment and

providing adequate assurance of future performance under the agreement to the counter party

pursuant to 11 U.S.C. § 365.  To the extent that the Trustee accepts an offer for an executory

contract or unexpired lease, the Trustee will seek authority to assume and assign such contracts

and unexpired leases following the Public Sale.

Pursuant to the proposed terms of the sale, the Trustee, at his sole discretion, may offer

the Assets for sale in the entirety, in various combinations, and individually. The offer or offers

accepted by the Trustee will be the offer or combination of offers that provide the greatest

benefit to the Estates.

The terms of the sale are more particularly described below and are also disclosed in the

Sale Motion. A copy of the Sale Motion is available from counsel to the Trustee upon request.

## I.    THE ASSETS

1.    The Debtors' assets include those identified in the Schedules of Assets and

Liabilities and Statement of Financial Affairs filed by the Debtors and as may be identified on

www.pesco.com, the website of his proposed auctioneer, Paul E. Saperstein Co., Inc., and

include but are not limited to all of the Estates' right, title and interest in and to assets, properties

and rights of every kind, nature, character and description, whether personal or mixed, whether

tangible or intangible, whether accrued, contingent or otherwise and wherever located, including

the following assets, properties and rights in which the Debtors may hold a right, title and

interest, to the extent transferable, with the exception of the Excluded Assets (defined below)

including, but not limited to (collectively, the "Assets"):

(i)     intellectual property, trade names and trade secrets, including the trade names set forth on the attached Schedule 1;

(ii)    domain names, including those set forth on the attached Schedule 2;

(iii)   social media accounts, related internet pages, content and contact/subscriber lists, and any related social media assets, including those set forth on Schedule 3;

(iv)    goodwill and other intangibles, including those set forth on the attached Schedule 4;

(v)     interests in domestic and foreign non-debtor entities, including LGS's Swedish subsidiary, LGS Europe, AB ("LGS Europe");

(vi)    accounts receivable and prepaid expenses;

(vii)   licenses, permits and other approvals;

(viii)  executory contracts and unexpired leases, including those set forth on Schedule 5;

(ix)    customer lists, customer communications, and marketing information including personally identifiable information defined pursuant to 11 U.S.C. § 101(41A) in accordance with the Debtors' privacy policies to the extent permitted by the Bankruptcy Court;

(x)     computers, including those set forth on Schedule 6;

(xi)    vehicles, wherever located, including those set forth on the attached Schedule 7;

(xii)   various hockey equipment, apparel, signs and marketing material located at A-Verdi Storage Containers, 14150 Route 31, Savannah, NY13146 and at Life Storage, 6467 Main Street, Buffalo, NY 14221;

(xiii)  various lacrosse equipment, apparel, signs and marketing material located at Cubesmart Cube F51, 307 East Hanover, NJ 07960; and

(xiv)   rights relating to the enforcement or protection of any of the purchased Assets.

2.      **Excluded Assets**.  The Assets do not include (the "Excluded Assets"): (i) cash and cash equivalents, unless specified by the Trustee; (ii)  amounts due or claims against Travis Bezio, John St. Pierre, or other insiders as that term is defined pursuant to 11 U.S.C. § 101(31); (iii) books and records related to the financial affairs of the Debtors and the hardware associated with maintaining the Debtors' financial books and records; (iv) books and records related to the Excluded Assets; (v) the insurance policies, proceeds of insurance, and all of the Estates' rights and benefits thereunder, including rights to prepaid amounts and proceeds arising from or relating to the Assets; (vi) tax refunds, tax benefits and tax deposits receivable of the; (vii) employee benefit plans and all rights in connection with and under the employee benefit plans, (viii) employee personnel records; (ix) causes of action, judgments, claims, demands, rights of recovery or set-off of whatever nature, including, without limitation, avoidance actions arising under 11 U.S.C. §§544-551, except rights relating to the enforcement or protection of any of the purchased Assets; (x) amounts held by Debtors' payment processor, TSYS, against anticipated charge backs; (xi) personally identifiable information pursuant to 11 U.S.C. § 101(41A) unless expressly permitted by an order of the Bankruptcy Court; and (xii) such additional assets as the Trustee may identify and announced prior to the commencement of the Public Sale.

## II.    THE ASSETS SHALL BE SOLD FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

2.      Pursuant to 11 U.S.C. § 363(f) and the Sale Motion, the Assets are to be sold free and clear of liens, claims, interests and encumbrances whatsoever, known or unknown, including without limitation those noted in the Sale Motion, except as to restrictions, easements, and limitations. The Assets are to be sold in "as is" and "where is" condition. Further, the Trustee is not making any representations or warranties whatsoever, either express or implied, with respect to the Assets.

3.      All valid liens, claims or encumbrances shall attach to the proceeds of the sale of the Assets. The validity and enforceability of any contested lien shall be determined by the Bankruptcy Court after due notice and hearing.

Case 20-11157  Doc 100-1  Filed 08/21/20  Entered 08/21/20 10:16:32  Desc Exhibit
Notice of Intended Public Sale    Page 6 of 29

Case 1:22-cv-100-1  Document 1-1  Filed 02/21/2  Page 39 of 94

### III.    AUCTION DATE, DEADLINE FOR OBJECTIONS, AND HEARING ON SALE MOTION

**4.      The Public Sale will be held on October 1, 2020 at 11 a.m. and will take place entirely online.  Details for participating in the Public Sale including with respect to registration and eligibility to participate in the Public Sale, will be made available at www.pesco.com.**

**5.      A HEARING ON THE SALE MOTION AND ANY OBJECTIONS THERETO ARE SCHEDULED TO TAKE PLACE BY TELEPHONE ON _____ ("SALE HEARING") BEFORE THE HONORABLE JANET E. BOSTWICK, UNITED STATES BANKRUPTCY JUDGE, United States Bankruptcy Court, John W. McCormack Post Office & Court House, 5 Post Office Square, Boston, Massachusetts 02109 ("COURT").  ANY PARTY WHO HAS FILED AN OBJECTION TO THE SALE MOTION IS EXPECTED TO BE PRESENT AT THE SALE HEARING, FAILING WHICH THE OBJECTION MAY BE OVERRULED. IF NO OBJECTION TO THE SALE MOTION IS TIMELY FILED, THE COURT, IN ITS DISCRETION, MAY CANCEL THE SALE HEARING AND APPROVE THE SALE MOTION.**

7.      Any objection to the Sale Motion must be in writing and filed with the Clerk, United States Bankruptcy Court, John W. McCormack Post Office & Court House, 5 Post Office Square, Boston, Massachusetts 02109, on or before _____ ("Objection Deadline"). A copy of any objection must be also served upon undersigned counsel to the Trustee so as to be received on or before the Objection Deadline. Any objection must state with particularity the grounds for the objection and the interest that the objecting party has in these proceedings, and shall be governed by Fed. R. Bankr. P. 9014.

### IV.    TERMS OF THE SALE

8.      The Public Sale will be conducted pursuant to the following terms:

(i)      Pursuant to section 363(f) of the Bankruptcy Code, the Assets shall be sold free and clear of any liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests, if any, attaching to the proceeds of such sale to the same extent, validity and priority as they existed on the date of the Public Sale.

(ii)     All of the Assets shall be sold and transferred on an "as is, where is" basis without representation or warranty.

(iii)    In order to qualify to participate in the Public Sale, bidders are required to: (i) submit a deposit of $5,000 by wire and (ii) provide written notice to the Auctioneer of the assets to be bid upon no later than 48 hours in advance of the Public Sale.

(iv)     The high bidders for any or all of the Assets will be required to wire the balance of the purchase price no later than 48 hours following the conclusion of the Public Sale.

(v)     The Trustee may, in his sole discretion, offer the Assets for sale in the entirety, in lots of various combinations, and in individual lots.

(vi)     The Trustee reserves the right to withdraw all or a portion of the Assets from the Public Sale at or prior to the Public Sale.

(vii)     The Trustee reserves the right prior to the Public Sale to enter into an agreement for the disposition of a portion or all of the Assets and to sell the Assets by private sale subject to Court approval.

(viii)     The Trustee reserves the right to reject, in his sole discretion, any and all bids for all or a portion of the Assets.

(ix)     To the extent that the Trustee accepts a bid for all or a portion of the Assets that includes an executory contract or an unexpired lease, the sale shall be subject to Court approval of the Trustee's assumption and assignment of such executory contract or unexpired lease. Bidders shall be responsible for paying cure amounts and providing adequate assurance of future performance to the counter party.

(x)     To the extent that the Trustee does not consummate a sale to the highest bidder for any or all of the Assets for any reason, the Trustee may sell all or a portion of the Assets to the second highest bidder(s) for the Assets in his discretion

(xi)     The Trustee, in consultation with the Auctioneer, may, at or before the Public Sale, may impose such other and additional terms and conditions as he determines to be in the best interests of the Trustee, the estate, its creditors and other parties in interest.

(xii)     Additional terms may be announced by the Auctioneer at the time of the Public Sale.

(xiii)     The Court may take evidence at any hearing on approval of the proposed Public Sale to resolve issues of fact.

(xiv)     The Court may modify the method of sale set forth herein at or prior to the hearing on the proposed Public Sale.

9.     You may obtain additional information regarding the Public Sale from the

Auctioneer at www.pesco.com.

10.    You may receive a complete copy of the Sale Motion by contacting the Trustee's

counsel at the address set forth below.

Respectfully Submitted,

HAROLD B. MURPHY,
Chapter 7 Trustee
By his counsel,

 /s/ Kathleen R. *Cruickshank*
Harold B. Murphy (BBO #326610)
Kathleen R. Cruickshank (BBO #550675)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108-3107
Tel: (617) 423-0400
Email: KCruickshank@murphyking.com

Dated:  August 21, 2020
783867

Case 1:22-cv-10029-PBJ   Document 1-5   filed 02/03/22   Page 42 of 94

IN RE: **LEGACY GLOBAL SPORTS, L.P.,** ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 1 TO

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS**

## TRADE NAMES/OTHER NAMES UNDER WHICH BUSINESS IS TRANSACTED

| Trade Names for "Legacy Global Sports, L.P." |
| --- |
| **New Hampshire** |
| Legacy Global Sports – Registered Trade Name |
| Action Youth – Registered Trade Name |
| Level 2 Sports - Registered Trade Name |
| Level 2 - Registered Trade Name |
| T3 Travel - Registered Trade Name |
| T3 – Trade Name |
| Team Tournament Travel - Registered Trade Name |
| PSE - Registered Trade Name |
| LGS Team Sales - Registered Trade Name |
| Swedsport Tournaments & Event - Registered Trade Name |
| Swedsport - Registered Trade Name |
| **Michigan** |
| Legacy Global Sports, Limited Partnership - Registered Trade Name |

Case 1:22-cv-30045-PBS   Document 1-1   Filed 02/23/22   Page 44 of 94

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 2 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

Case 20-11157   Doc 100-1   Filed 08/21/20   Entered 08/21/20 10:16:32   Desc Exhibit
Notice of Intended Public Sale    Page 12 of 29

Case 1:22-cv-00045-PB Document 1-1 Filed 02/23/22 Page 45 of 94

DOMAIN NAMES

| Domain Names |
| --- |
| actionyouth.com |
| atllaxtourney.com |
| bauermotownclassic.com |
| bedfordsoccerleague.com |
| big12lacrosse.com |
| collegesoccerchance.com |
| collegesoccerscholarships.com |
| cradleforthecure.net |
| eastcoastselects.com |
| Easterncanadaselects.com |
| fireonicehockey.com |
| globalpremier.soccer |
| globalpremiersoccer.com |
| globalpremierfootball.com |
| globalpremierscholarships.com |
| globalpremiersoccer.ca |
| globalpremiersoccer.co.uk |
| globalpremiersoccer.com |
| globalpremiersoccer.info |
| globalpremiersoccer.net |
| globalpremiersoccer.org |
| globalpremiersoccer.canada.com |
| gpsacademcy.ca |
| gpsalbany.com |
| gps-arizona.com |
| gps-california.com |
| gpscanada.net |
| gps-carolina.com |
| gpscoastalacademcy.com |
| gps-colorado.com |
| gpscompete.com |
| gpsconnecticut.com |
| gps-connecticut.com |
| gpsdelaware.com |
| gpsdelawarerevolution.com |
| gpsesports.com |
| gps-florida.net |
| gps-foundation.com |
| gps-foundation.org |
| gps-georgia.com |
| gps-illinois.com |
| gps-international.net |

| |
|---|
| gps-iowa.com |
| gps-jersey.com |
| gps-kansas.com |
| gpskcnorth.com |
| gps-maine.com |
| gps-maryland.com |
| gps-massachusetts.com |
| gps-michigan.com |
| gps-milanboston.com |
| gps-minnesota.com |
| gpsmissouri.com |
| gpsnasa.com |
| gps-nevada.com |
| gps-newhampshire.com |
| gps-newyork.com |
| gpsnewyorkcity.com |
| gpsnorthshore.com |
| gps-oc.com |
| gps-ohio.com |
| gps-orangecounty.com |
| gpsoregon.com |
| gps-oregon.com |
| gps-pennsylvania.com |
| gpspuertorico.com |
| gpsrhodeisland.com |
| gps-rhodeisland.com |
| gps-sandiego.com |
| gps-sanfrancisco.com |
| gps-sd.com |
| gps-see.com |
| gpssoccerassassins.com |
| gps-spain.net |
| gpssynergy.com |
| gps-syracuse.com |
| gpstechnicalarea.com |
| gps-texas.com |
| gpstorontosw.com |
| gpstournaments.com |
| gpsvacationprograms.com |
| gps-vermont.com |
| gps-virginia.com |
| gps-washington.com |
| heatwavelax.com |
| hhofinvitational.com |
| hoflacrosseinvitational.com |

Case 20-11157   Doc 100-1   Filed 08/21/20   Entered 08/21/20 10:16:32   Desc Exhibit
Notice of Intended Public Sale    Page 14 of 29

Case 1:22-cv-00029-PB   Document 1-5   Filed 02/04/22   Page 47 of 94

| |
|---|
| internationalsoccer.academy |
| laxlifeevents.com |
| laxlifetournaments.com |
| legacyglobalsports.ca |
| legacyglobalsports.com |
| legacyonlinefundraiser.com |
| legacysoccertours.com |
| lgshockey.com |
| lgslacrosse.com |
| lgssoccer.com |
| lgssoccertours.com |
| lgstours.com |
| maverikprospectdays.com |
| memorialdaytournament.com |
| mmajorlax.com |
| motownclassicgear.com |
| mrshockeyinvite.com |
| naionallacrosseclassic.com |
| nlcnation.com |
| npe80.com |
| pseeventhousing.com |
| pseeventhousing.net |
| psehousing.com |
| satlacrosse.com |
| scoopituplax.com |
| selectsacademy.com |
| selectshockey.ca |
| selectshockey.com |
| southernlacrosseshowcase.com |
| southernlaxshowcase.com |
| sportsevents.world |
| sportstravel.world |
| swedenselects.com |
| t3lacrosse.com |
| t3lacrosse.info |
| t3lacrosse.net |
| t3lacrosse.org |
| thedrafthockey.com |
| ti22sportswear.com |
| tournamenthotels.com |
| tournamenthotels.net |
| travelteamusa.com |
| w7l.org |
| westcoastselects.com |
| westerncanadaselects.com |

| | |
|---|---|
| | wishbonelax.com |
| | womanshockey.com |
| | worldhockeyrankings.com |
| | worldselects.com |
| | worldselectsinvite.com |
| | xflacademy.com |

Case 1:22-cv-00029-PB   Document 1-3   Filed 02/03/22   Page 49 of 94

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 3 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

Case 1:22-cv-00645-PB   Document 1-1   Filed 08/23/22   Page 50 of 94

SOCIAL MEDIA ACCOUNTS

| Social Media Platform | Handle | Username/Email |
|---|---|---|
| Twitter | @legacygs | legacy_sm@legacyglobalsports.com |
| Twitter | @LEGACYgs_SWE | legacy_sm@legacyglobalsports.com |
| Facebook | @LEGACYgs | legacy_sm@legacyglobalsports.com |
| LinkedIn | LEGACY Global Sports | legacy_sm@legacyglobalsports.com |
| Instagram | legacyglobalsports | aesposito@legacyglobalsports.com |
| SnapChat | LEGACYgs | legacy_sm@legacyglobalsports.com |
| Instagram | Legacy2018 | |
| Facebook | @LEGACYgsApparel | econklin@legacyglobalsports.com |
| Instagram | ti22sportswear | ti22sportswear |
| Twitter | ti22sportswear | ti22sportswear |
| Facebook | Hall of Fame Sports Complex | |
| Instagram | @hofvillagesports | hofvillagesports |
| Twitter | @7v7ARMY | @7v7ARMY |
| Instagram | @7v7ARMY | @7v7ARMY |
| SnapChat | @7v7ARMY | @7v7ARMY |
| Twitter | @LGS_Golf | lgs_golf@legacyglobalsports.com |
| Instagram | @LGSGolf | lgsgolf |
| Instagram | @LGS_NationsCupGolf | lgsncgolf |
| Twitter | @SELECTS_Hockey | selects_academcy@legacyglobalsports.com |
| Twitter | @SK_SKS_Hockey | selects_academcy@legacyglobalsports.com |
| Twitter | @lgshockey | cgonzalez@legacyglobalsports.com |
| Facebook | @selectshockey | |
| Facebook | @legacyglobalhockey | |
| Instagram | @lgshockey | cgonzalez@legacyglobalsports.com |
| Instagram | @selects_hockey | legacy_sm@legacyglobalsports.com |
| Instagram | @SELECTS_Academy | selects_academy@legacyglobalsports.com |
| YouTube | info@selectshockey.com | info@selectshockey.com |
| YouTube | @legacyglobalhockey | sristic@legacyglobalsports.com |
| Twitter | @Bauer_Motown | |
| Facebook | motownclassichockey | |
| Facebook | HHOF | HHOF |
| Instagram | hhof_futurelegends | hhof_futurelegends |
| Twitter | HHOFLegends | HHOFLegends |
| Twitter | @WorldSelectsInv | ctufts@legacyglobalsports.com |
| Twitter | @SELECTS_Girls | cbaudo@legacyglobalsports.com |
| Twitter | @selectstourneys | |
| Instagram | WorldSelectsInv | l.egacy_sm@legacyglobalsports.com |
| YouTube | World Selects Invite | legacy@_sm@legacyglobalsports.com |
| Twitter | @NLCLacrosse | level2lax |
| Instagram | nlclacrosse | Portsmouth99 |

| SnapChat | BrineNLC2017 | Portsmouth99 |
|---|---|---|
| Twitter | @cascadenpe80 | hopkins32 |
| Instagram | cascadenpe80 | hopkins32 |
| Twitter | @BrogdenCupLax | Leg@cyL@x17! |
| Instagram | BrogdenCup | lax2018 |
| Twitter | @LGSLacrosse | Legacy2017 |
| Instagram | lgs_lacrosse | Portsmouth99 |
| Facebook | Legacy Global Lacrosse | |
| YouTube | Legacy Global Lacrosse | legacyglobalsportslacrosse@gmail.com |
| Instagram | @LaxLifeEvents | laxlifeevents |
| Twitter | @LaxLifeEvents | laxlifeevents |
| Facebook | LaxLifeEvents | |
| SnapChat | laxexperiment | nbarletta@legacyglobalsports.com |
| Instagram | @thelaxexperiment | nbarletta@legacyglobalsports.com |
| Twitter | @laxexperiment | nbarletta@legacyglobalsports.com |
| Facebook | The Lax Experiment | admin |
| Facebook | Travel Team USA | |
| Twitter | @TravelTeamUSA | |
| Instagram | @travelteamusa | |
| Instagram | @Sportsevents | jcarter@legacyglobalsports.com |
| Twitter | @LGS_Soccer | selects_soccer@legacyglobalsports.com |
| Facebook | @LGSSoccer | Admin Privilege |
| Instagram | @LGSSoccer | |
| Instagram | gpsmasachusetts | |
| Instagram | gps_soccerassassins | |
| Instagram | gpstournaments | |
| Instagram | gps_florida | |
| Instagram | gpsfloridawest | |
| Instagram | gps_buffalo | |
| Instagram | gpscarolina | |
| Instagram | gps_sandiego | |
| Instagram | gpsnasa | |
| Instagram | gpslexington | |
| Instagram | FC America | |
| Instagram | GPS Albany | |
| Instagram | GPS Camps | |
| Instagram | GPS Coastal Academy | |
| Instagram | GPS Connecticut | |
| Instagram | GPS Delaware | |
| Instagram | GPS Georgia | |
| Instagram | GPS Maine | |
| Instagram | GPS Missouri | |
| Instagram | GPS New Hampshire | |
| Instagram | GPS New Jersey | |
| Instagram | GPS North Shore | |

Case 20-11157 Doc 100-1 Filed 08/21/20 Entered 08/21/20 10:16:32 Desc Exhibit
Notice of Intended Public Sale Page 19 of 29
Case 1:22-cv-00649-PJG Document 1-1 Filed 08/24/22 Page 52 of 94

| | | |
|---|---|---|
| Instagram | GPS Oregon | |
| Instagram | GPS Puerto Rico | |
| Instagram | GPS Reading | |
| Instagram | GPS Rhode Island | |
| Instagram | GPS Vermont | |
| Instagram | Hunters Creek | |
| Instagram | Maitland SC | |
| Instagram | Rochester FC | |
| Instagram | GPS Goalkeeping | |
| Instagram | GPS Syracuse | |
| Instagram | GPS Lexington | |
| Instagram | GPS Minnesota | |
| Instagram | GPS UK | |
| Instagram | GPS Spain | |
| Instagram | GPS SEE | |
| Instagram | GPS SEE Cyprus | |
| Instagram | GPS North London | |
| Instagram | GPS Oxford Academy | |
| Instagram | GPS Orange County | |
| Instagram | GPS | |
| Facebook | FC America | |
| Facebook | GPS Atlanta | |
| Facebook | GPS Camps | |
| Facebook | GPS Canada | |
| Facebook | GPS Carolina | |
| Facebook | GPS Coastal Academy | |
| Facebook | GPS Florida | |
| Facebook | GPS Florida West | |
| Facebook | GPS Georgia | |
| Facebook | GPS Maine | |
| Facebook | GPS Massachusetts | |
| Facebook | GPS Missouri | |
| Facebook | GPS NASA | |
| Facebook | GPS New Hampshire | |
| Facebook | GPS New Jersey | |
| Facebook | GPS New York | |
| Facebook | GPS North Shore | |
| Facebook | GPS Oregon | |
| Facebook | GPS Rhode Island | |
| Facebook | GPS Stateline | |
| Facebook | GPS Vermont | |
| Facebook | Hunters Creek | |
| Facebook | Maitland SC | |
| Facebook | Rochester FC | |
| Facebook | GPS Puerto Rico | |

| | | |
|---|---|---|
| Facebook | GPS Tournaments | |
| Facebook | GPS Syracuse | |
| Facebook | GPS Lexington | |
| Facebook | GPS Minnesota | |
| Facebook | GPS Spain | |
| Facebook | GPS SEE | |
| Facebook | GPS SEE Cyprus | |
| Facebook | GPS UK | |
| Facebook | GPS Reading Academy | |
| Facebook | GPS | |
| Facebook | GPS International | |
| Facebook | GPS Assassins | |
| Twitter | GPS Carolina | |
| Twitter | GPS Florida | |
| Twitter | GPS Georgia | |
| Twitter | GPS Maine | |
| Twitter | GPS Massachusetts | |
| Twitter | GPS New Hampshire | |
| Twitter | GPS New Jersey | |
| Twitter | GPS Rhode Island | |
| Twitter | GPS Vermont | |
| Twitter | Rochester FC | |
| Twitter | GPS Missouri | |
| Twitter | GPS Coastal Academy | |
| Twitter | GPS NASA | |
| Twitter | GPS Delaware | |
| Twitter | GPS Stateline | |
| Twitter | Hunters Creek | |
| Twitter | FC America | |
| Twitter | Maitland SC | |
| Twitter | GPS Tournaments | |
| Twitter | GPS UK | |
| Twitter | GPS SEE | |
| Twitter | GPS Reading Academy | |
| Twitter | GPS | |
| Twitter | GPS International | |

Case 1:22-cv-30029-PBS   Document 1-1   Filed 02/03/22   Page 54 of 94

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*


SCHEDULE 4 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

Case 20-11157  Doc 100-1  Filed 08/21/20  Entered 08/21/20 10:16:32  Desc Exhibit
Notice of Intended Public Sale    Page 22 of 29
Case 1:22-cv-00045-PB  Document 1-1  Filed 02/04/22  Page 55 of 94

## GOODWILL AND INTANGIBLES

| Goodwill |
|---|
| Investment in Action Youth – Goodwill |
| Investment in PSE – Goodwill |
| Goodwill GPS: Admin |
| Goodwill – T3 Lacrosse |
| Goodwill – T3 Housing |
| Goodwill – Level 2 |
| Goodwill – F&B |
| Goodwill – First Scout |
| Goodwill – IHT |
| Goodwill – JWK |
| Goodwill – TTS |
| Goodwill – Prior Acq |
| Goodwill – TTUSA |
| Goodwill – MCC |
| Goodwill – HP |
| **Intangibles** |
| Exclusivity Rights |
| Deferred Financing Fees / Legal Fees – PSE |
| Deferred Financing Fees / Legal Fees – AY |
| Deferred Financing Fees / Legal Fees – IAS |
| PSE Non-Compete |
| PSE Customer List |
| PSE Employment Contract |
| AY Non-Compete |
| AY Customer List |
| PSE Employment Contract |
| AY Non-Compete |
| AY Customer List |
| Level 2 Sports Intellectual Property |
| T3 Covenant Not to Compete |
| T3 Contracts |
| FSP Customer List |
| FSP Employment Contract |
| FSP Covenant not to Compete |
| JEW Customer List |
| JWK Non Compete |
| TTS Customer List |
| IHT Customer List |
| IHT Employee Contracts |
| IHT Non Compete |
| HP Non Compete |
| HP Customer List |

| MCC Non Compete |
| --- |
| TTUSA Customer Lists |
| T3 LAX Employment Contracts  - Lori Brown |
| T3 LAX Employment Contracts – Brandt/Holley/Raichle |
| MCC Customer List |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 5 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

NON-RESIDENTIAL REAL PROPERTY LEASES & EXECUTORY CONTRACTS

| Debtor Counter Party | Non-Debtor Counter Party | Property Description |
|---|---|---|
| Global Premier Soccer | Northern Ireland International Youth Football Cup Limited | Sponsorship Agreement |
| Legacy Global Sports, L.P. | En Masse 360, LLC | 1 High Street Court Morristown, NJ 07960 |
| Legacy Global Sports, L.P. | Old Tex Mex, LLC | 290 Heritage Ave. Portsmouth, NH 03801 |
| Legacy Global Sports, L.P. | United States Specialty Sports Association | Referral Agreement |
| Legacy Global Hockey LLC | LiveBarn, Inc. | Annual Sponsorship Agreement |
| LGS Manufacturing, LLC | Champro Sports | Sports Clothing Manufacturing Agreement |
| Legacy Global Sports, L.P. | Hockey Hall of Fame and Museum | Promotional Licensing Agreement – Restricted right to use HHOF marks and archival material |

Case 1:22-cv-00029-PB Document 1-1 Filed 02/01/22 Page 59 of 94

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 6 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

## LEGACY GLOBAL SPORTS COMPUTERS

| LGS Asset | Serial # | Description |
|---|---|---|
| Dell Latitude 3500 Laptop | 1BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | 3BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | 4BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | J9BLW2 | New in Box |
| Dell Latitude 3500 Laptop | 937NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 237NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 337NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 637NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 837NKW2 | Returned by Employee |
| Dell OptiPlex 3070 Desktop | 1LZVY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0XY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1WY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1LZWY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1XY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0VY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0WY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M2VY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1LZTY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1VY23 | New in Box |

Case 1:22-cv-30045-PBS   Document 1-2   Filed 03/23/22   Page 61 of 94

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

### SCHEDULE 7 TO

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Case 1:22-cv-00049-PB   Document 1-1   Filed 02/03/22   Page 62 of 94

## VEHICLES

| State | Year | Make | Model | VIN |
|---|---|---|---|---|
| California | 2018 | Ford | Focus | 1FADP3K25JL224464 |
| Carolina | 2002 | Acura | 3.2 CL | 19UYA42402A004460 |
| Carolina | 2005 | Honda | Accord | 1HGCM715X5A024569 |
| Carolina | 2011 | BMW | 328 | WBAPH7C59BE460073 |
| Carolina | 2001 | Ford | Taurus | 1FAFP55U01G200759 |
| Carolina | 1999 | Toyota | Sienna | 4T3ZF13C3XU148036 |
| Carolina | 2006 | Buick | Lucerne | 1G4HD57256U221358 |
| Carolina | 2004 | Honda | Pilot | 2HKYF18414H576395 |
| Carolina | 1996 | Honda | Civic | 1HGEJ6120TL020940 |
| Delawarea | 2007 | Ford | Ranger | 1FTYR10D87PA91621 |
| Florida | 2016 | Volkswagen | Jetta | 3VW267AJ3GM296787 |
| Florida | 2016 | Volkswagen | Jetta | 3VW267AJ4GM219250 |
| Maine | 2012 | Subaru | Forester | JF2SH63639G700850 |
| Maine | 2007 | Dodge | Grand Caravan | |
| Minnesota | 2010 | Toyota | Corolla | 2T1BU4EE8AC486606 |
| Minnesota | 2009 | Dodge | Journey | 3D4GH57VX9T598042 |
| New Hampshire | 2007 | Ford | Fusion | 3FAHP07Z17R172962 |
| New Hampshire | 2005 | Toyota | Sienna | 5TDZA23C95S384046 |
| New Hampshire | 2011 | Mitsubishi | Lancer | JA32U2FU4BU009717 |
| New Jersey | 2003 | Chevrolet | Trailblazer | 1GNET16S536201736 |
| New Jersey | 2013 | Chevrolet | Spark | KL8CC6S92DC507689 |
| New York | 2016 | Nissan | Sentra | 3N1AB7AP0GL682140 |
| Canada | | Nissan | Sentra | 3N1AB7AP2FY315645 |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 1 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

TRADE NAMES/OTHER NAMES UNDER WHICH BUSINESS IS TRANSACTED

| Trade Names for "Legacy Global Sports, L.P." | |
|---|---|
| **New Hampshire** | |
| | Legacy Global Sports – Registered Trade Name |
| | Action Youth – Registered Trade Name |
| | Level 2 Sports - Registered Trade Name |
| | Level 2 - Registered Trade Name |
| | T3 Travel - Registered Trade Name |
| | T3 – Trade Name |
| | Team Tournament Travel - Registered Trade Name |
| | PSE - Registered Trade Name |
| | LGS Team Sales - Registered Trade Name |
| | Swedsport Tournaments & Event - Registered Trade Name |
| | Swedsport - Registered Trade Name |
| **Michigan** | |
| | Legacy Global Sports, Limited Partnership - Registered Trade Name |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 2 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

DOMAIN NAMES

| Domain Names |
|---|
| actionyouth.com |
| atllaxtourney.com |
| bauermotownclassic.com |
| bedfordsoccerleague.com |
| big12lacrosse.com |
| collegesoccerchance.com |
| collegesoccerscholarships.com |
| cradleforthecure.net |
| eastcoastselects.com |
| Easterncanadaselects.com |
| fireonicehockey.com |
| globalpremier.soccer |
| globalpremiersoccer.com |
| globalpremierfootball.com |
| globalpremierscholarships.com |
| globalpremiersoccer.ca |
| globalpremiersoccer.co.uk |
| globalpremiersoccer.com |
| globalpremiersoccer.info |
| globalpremiersoccer.net |
| globalpremiersoccer.org |
| globalpremiersoccer.canada.com |
| gpsacademcy.ca |
| gpsalbany.com |
| gps-arizona.com |
| gps-california.com |
| gpscanada.net |
| gps-carolina.com |
| gpscoastalacademcy.com |
| gps-colorado.com |
| gpscompete.com |
| gpsconnecticut.com |
| gps-connecticut.com |
| gpsdelaware.com |
| gpsdelawarerevolution.com |
| gpsesports.com |
| gps-florida.net |
| gps-foundation.com |
| gps-foundation.org |
| gps-georgia.com |
| gps-illinois.com |
| gps-international.net |

| |
|---|
| gps-iowa.com |
| gps-jersey.com |
| gps-kansas.com |
| gpskcnorth.com |
| gps-maine.com |
| gps-maryland.com |
| gps-massachusetts.com |
| gps-michigan.com |
| gps-milanboston.com |
| gps-minnesota.com |
| gpsmissouri.com |
| gpsnasa.com |
| gps-nevada.com |
| gps-newhampshire.com |
| gps-newyork.com |
| gpsnewyorkcity.com |
| gpsnorthshore.com |
| gps-oc.com |
| gps-ohio.com |
| gps-orangecounty.com |
| gpsoregon.com |
| gps-oregon.com |
| gps-pennsylvania.com |
| gpspuertorico.com |
| gpsrhodeisland.com |
| gps-rhodeisland.com |
| gps-sandiego.com |
| gps-sanfrancisco.com |
| gps-sd.com |
| gps-see.com |
| gpssoccerassassins.com |
| gps-spain.net |
| gpssynergy.com |
| gps-syracuse.com |
| gpstechnicalarea.com |
| gps-texas.com |
| gpstorontosw.com |
| gpstournaments.com |
| gpsvacationprograms.com |
| gps-vermont.com |
| gps-virginia.com |
| gps-washington.com |
| heatwavelax.com |
| hhofinvitational.com |
| hoflacrosseinvitational.com |

| |
|---|
| internationalsoccer.academy |
| laxlifeevents.com |
| laxlifetournaments.com |
| legacyglobalsports.ca |
| legacyglobalsports.com |
| legacyonlinefundraiser.com |
| legacysoccertours.com |
| lgshockey.com |
| lgslacrosse.com |
| lgssoccer.com |
| lgssoccertours.com |
| lgstours.com |
| maverikprospectdays.com |
| memorialdaytournament.com |
| mmajorlax.com |
| motownclassicgear.com |
| mrshockeyinvite.com |
| naionallacrosseclassic.com |
| nlcnation.com |
| npe80.com |
| pseeventhousing.com |
| pseeventhousing.net |
| psehousing.com |
| satlacrosse.com |
| scoopituplax.com |
| selectsacademy.com |
| selectshockey.ca |
| selectshockey.com |
| southernlacrosseshowcase.com |
| southernlaxshowcase.com |
| sportsevents.world |
| sportstravel.world |
| swedenselects.com |
| t3lacrosse.com |
| t3lacrosse.info |
| t3lacrosse.net |
| t3lacrosse.org |
| thedrafthockey.com |
| ti22sportswear.com |
| tournamenthotels.com |
| tournamenthotels.net |
| travelteamusa.com |
| w7l.org |
| westcoastselects.com |
| westerncanadaselects.com |

Case 1:17-cv-00499-a   Document 17   Filed 03/23/21   Page 69 of 94

| | |
|---|---|
| | wishbonelax.com |
| | womanshockey.com |
| | worldhockeyrankings.com |
| | worldselects.com |
| | worldselectsinvite.com |
| | xflacademy.com |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 3 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

Case 1:22-cv-00043-LY   Document 1-2   Filed 02/03/22   Page 71 of 94

SOCIAL MEDIA ACCOUNTS

| Social Media Platform | Handle | Username/Email |
|---|---|---|
| Twitter | @legacygs | legacy_sm@legacyglobalsports.com |
| Twitter | @LEGACYgs_SWE | legacy_sm@legacyglobalsports.com |
| Facebook | @LEGACYgs | legacy_sm@legacyglobalsports.com |
| LinkedIn | LEGACY Global Sports | legacy_sm@legacyglobalsports.com |
| Instagram | legacyglobalsports | aesposito@legacyglobalsports.com |
| SnapChat | LEGACYgs | legacy_sm@legacyglobalsports.com |
| Instagram | Legacy2018 | |
| Facebook | @LEGACYgsApparel | econklin@legacyglobalsports.com |
| Instagram | ti22sportswear | ti22sportswear |
| Twitter | ti22sportswear | ti22sportswear |
| Facebook | Hall of Fame Sports Complex | |
| Instagram | @hofvillagesports | hofvillagesports |
| Twitter | @7v7ARMY | @7v7ARMY |
| Instagram | @7v7ARMY | @7v7ARMY |
| SnapChat | @7v7ARMY | @7v7ARMY |
| Twitter | @LGS_Golf | lgs_golf@legacyglobalsports.com |
| Instagram | @LGSGolf | lgsgolf |
| Instagram | @LGS_NationsCupGolf | lgsncgolf |
| Twitter | @SELECTS_Hockey | selects_academcy@legacyglobalsports.com |
| Twitter | @SK_SKS_Hockey | selects_academcy@legacyglobalsports.com |
| Twitter | @lgshockey | cgonzalez@legacyglobalsports.com |
| Facebook | @selectshockey | |
| Facebook | @legacyglobalhockey | |
| Instagram | @lgshockey | cgonzalez@legacyglobalsports.com |
| Instagram | @selects_hockey | legacy_sm@legacyglobalsports.com |
| Instagram | @SELECTS_Academy | selects_academy@legacyglobalsports.com |
| YouTube | info@selectshockey.com | info@selectshockey.com |
| YouTube | @legacyglobalhockey | sristic@legacyglobalsports.com |
| Twitter | @Bauer_Motown | |
| Facebook | motownclassichockey | |
| Facebook | HHOF | HHOF |
| Instagram | hhof_futurelegends | hhof_futurelegends |
| Twitter | HHOFLegends | HHOFLegends |
| Twitter | @WorldSelectsInv | ctufts@legacyglobalsports.com |
| Twitter | @SELECTS_Girls | cbaudo@legacyglobalsports.com |
| Twitter | @selectstourneys | |
| Instagram | WorldSelectsInv | l.legacy_sm@legacyglobalsports.com |
| YouTube | World Selects Invite | legacy@_sm@legacyglobalsports.com |
| Twitter | @NLCLacrosse | level2lax |
| Instagram | nlclacrosse | Portsmouth99 |

| SnapChat | BrineNLC2017 | Portsmouth99 |
| Twitter | @cascadenpe80 | hopkins32 |
| Instagram | cascadenpe80 | hopkins32 |
| Twitter | @BrogdenCupLax | Leg@cyL@x17! |
| Instagram | BrogdenCup | lax2018 |
| Twitter | @LGSLacrosse | Legacy2017 |
| Instagram | lgs_lacrosse | Portsmouth99 |
| Facebook | Legacy Global Lacrosse | |
| YouTube | Legacy Global Lacrosse | legacyglobalsportslacrosse@gmail.com |
| Instagram | @LaxLifeEvents | laxlifeevents |
| Twitter | @LaxLifeEvents | laxlifeevents |
| Facebook | LaxLifeEvents | |
| SnapChat | laxexperiment | nbarletta@legacyglobalsports.com |
| Instagram | @thelaxexperiment | nbarletta@legacyglobalsports.com |
| Twitter | @laxexperiment | nbarletta@legacyglobalsports.com |
| Facebook | The Lax Experiment | admin |
| Facebook | Travel Team USA | |
| Twitter | @TravelTeamUSA | |
| Instagram | @travelteamusa | |
| Instagram | @Sportsevents | jcarter@legacyglobalsports.com |
| Twitter | @LGS_Soccer | selects_soccer@legacyglobalsports.com |
| Facebook | @LGSSoccer | Admin Privilege |
| Instagram | @LGSSoccer | |
| Instagram | gpsmasachusetts | |
| Instagram | gps_soccerassassins | |
| Instagram | gpstournaments | |
| Instagram | gps_florida | |
| Instagram | gpsfloridawest | |
| Instagram | gps_buffalo | |
| Instagram | gpscarolina | |
| Instagram | gps_sandiego | |
| Instagram | gpsnasa | |
| Instagram | gpslexington | |
| Instagram | FC America | |
| Instagram | GPS Albany | |
| Instagram | GPS Camps | |
| Instagram | GPS Coastal Academy | |
| Instagram | GPS Connecticut | |
| Instagram | GPS Delaware | |
| Instagram | GPS Georgia | |
| Instagram | GPS Maine | |
| Instagram | GPS Missouri | |
| Instagram | GPS New Hampshire | |
| Instagram | GPS New Jersey | |
| Instagram | GPS North Shore | |

| Instagram | GPS Oregon | |
|-----------|------------|---|
| Instagram | GPS Puerto Rico | |
| Instagram | GPS Reading | |
| Instagram | GPS Rhode Island | |
| Instagram | GPS Vermont | |
| Instagram | Hunters Creek | |
| Instagram | Maitland SC | |
| Instagram | Rochester FC | |
| Instagram | GPS Goalkeeping | |
| Instagram | GPS Syracuse | |
| Instagram | GPS Lexington | |
| Instagram | GPS Minnesota | |
| Instagram | GPS UK | |
| Instagram | GPS Spain | |
| Instagram | GPS SEE | |
| Instagram | GPS SEE Cyprus | |
| Instagram | GPS North London | |
| Instagram | GPS Oxford Academy | |
| Instagram | GPS Orange County | |
| Instagram | GPS | |
| Facebook | FC America | |
| Facebook | GPS Atlanta | |
| Facebook | GPS Camps | |
| Facebook | GPS Canada | |
| Facebook | GPS Carolina | |
| Facebook | GPS Coastal Academy | |
| Facebook | GPS Florida | |
| Facebook | GPS Florida West | |
| Facebook | GPS Georgia | |
| Facebook | GPS Maine | |
| Facebook | GPS Massachusetts | |
| Facebook | GPS Missouri | |
| Facebook | GPS NASA | |
| Facebook | GPS New Hampshire | |
| Facebook | GPS New Jersey | |
| Facebook | GPS New York | |
| Facebook | GPS North Shore | |
| Facebook | GPS Oregon | |
| Facebook | GPS Rhode Island | |
| Facebook | GPS Stateline | |
| Facebook | GPS Vermont | |
| Facebook | Hunters Creek | |
| Facebook | Maitland SC | |
| Facebook | Rochester FC | |
| Facebook | GPS Puerto Rico | |

Case 1:22-cv-00018-TJ   Document 4-1   Filed 02/03/22   Page 74 of 94

| | | |
|---|---|---|
| Facebook | GPS Tournaments | |
| Facebook | GPS Syracuse | |
| Facebook | GPS Lexington | |
| Facebook | GPS Minnesota | |
| Facebook | GPS Spain | |
| Facebook | GPS SEE | |
| Facebook | GPS SEE Cyprus | |
| Facebook | GPS UK | |
| Facebook | GPS Reading Academy | |
| Facebook | GPS | |
| Facebook | GPS International | |
| Facebook | GPS Assassins | |
| Twitter | GPS Carolina | |
| Twitter | GPS Florida | |
| Twitter | GPS Georgia | |
| Twitter | GPS Maine | |
| Twitter | GPS Massachusetts | |
| Twitter | GPS New Hampshire | |
| Twitter | GPS New Jersey | |
| Twitter | GPS Rhode Island | |
| Twitter | GPS Vermont | |
| Twitter | Rochester FC | |
| Twitter | GPS Missouri | |
| Twitter | GPS Coastal Academy | |
| Twitter | GPS NASA | |
| Twitter | GPS Delaware | |
| Twitter | GPS Stateline | |
| Twitter | Hunters Creek | |
| Twitter | FC America | |
| Twitter | Maitland SC | |
| Twitter | GPS Tournaments | |
| Twitter | GPS UK | |
| Twitter | GPS SEE | |
| Twitter | GPS Reading Academy | |
| Twitter | GPS | |
| Twitter | GPS International | |

Case 1:22-cv-00049-PB   Document 1-1   Filed 02/03/22   Page 75 of 94

IN RE: **LEGACY GLOBAL SPORTS, L.P.**, ET AL.
BANKRUPTCY NOS. **20-11157-JEB**; AND **20-11351 THROUGH 20-11376-JEB**
*Jointly Administered Cases*

## SCHEDULE 4 TO

## MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

Case 1:22-cv-00014-FB Document 1-1 Filed 02/03/22 Page 76 of 94

## GOODWILL AND INTANGIBLES

| **Goodwill** |
|---|
| Investment in Action Youth – Goodwill |
| Investment in PSE – Goodwill |
| Goodwill GPS: Admin |
| Goodwill – T3 Lacrosse |
| Goodwill – T3 Housing |
| Goodwill – Level 2 |
| Goodwill – F&B |
| Goodwill – First Scout |
| Goodwill – IHT |
| Goodwill – JWK |
| Goodwill – TTS |
| Goodwill – Prior Acq |
| Goodwill – TTUSA |
| Goodwill – MCC |
| Goodwill – HP |
| **Intangibles** |
| Exclusivity Rights |
| Deferred Financing Fees / Legal Fees – PSE |
| Deferred Financing Fees / Legal Fees – AY |
| Deferred Financing Fees / Legal Fees – IAS |
| PSE Non-Compete |
| PSE Customer List |
| PSE Employment Contract |
| AY Non-Compete |
| AY Customer List |
| PSE Employment Contract |
| AY Non-Compete |
| AY Customer List |
| Level 2 Sports Intellectual Property |
| T3 Covenant Not to Compete |
| T3 Contracts |
| FSP Customer List |
| FSP Employment Contract |
| FSP Covenant not to Compete |
| JEW Customer List |
| JWK Non Compete |
| TTS Customer List |
| IHT Customer List |
| IHT Employee Contracts |
| IHT Non Compete |
| HP Non Compete |
| HP Customer List |

| | |
|---|---|
| MCC Non Compete | |
| TTUSA Customer Lists | |
| T3 LAX Employment Contracts  - Lori Brown | |
| T3 LAX Employment Contracts – Brandt/Holley/Raichle | |
| MCC Customer List | |

IN RE: **LEGACY GLOBAL SPORTS, L.P.,** ET AL.
BANKRUPTCY NOS. **20-11157-JEB;** AND **20-11351** THROUGH **20-11376-JEB**
*Jointly Administered Cases*

SCHEDULE **5** TO

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS**

NON-RESIDENTIAL REAL PROPERTY LEASES & EXECUTORY CONTRACTS

| Debtor Counter Party | Non-Debtor Counter Party | Property Description |
|---|---|---|
| Global Premier Soccer | Northern Ireland International Youth Football Cup Limited | Sponsorship Agreement |
| Legacy Global Sports, L.P. | En Masse 360, LLC | 1 High Street Court Morristown, NJ 07960 |
| Legacy Global Sports, L.P. | Old Tex Mex, LLC | 290 Heritage Ave. Portsmouth, NH 03801 |
| Legacy Global Sports, L.P. | United States Specialty Sports Association | Referral Agreement |
| Legacy Global Hockey LLC | LiveBarn, Inc. | Annual Sponsorship Agreement |
| LGS Manufacturing, LLC | Champro Sports | Sports Clothing Manufacturing Agreement |
| Legacy Global Sports, L.P. | Hockey Hall of Fame and Museum | Promotional Licensing Agreement – Restricted right to use HHOF marks and archival material |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 6 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

### LEGACY GLOBAL SPORTS COMPUTERS

| LGS Asset | Serial # | Description |
|---|---|---|
| Dell Latitude 3500 Laptop | 1BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | 3BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | 4BQBLW2 | New in Box |
| Dell Latitude 3500 Laptop | J9BLW2 | New in Box |
| Dell Latitude 3500 Laptop | 937NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 237NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 337NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 637NKW2 | New in Box |
| Dell Latitude 3500 Laptop | 837NKW2 | Returned by Employee |
| Dell OptiPlex 3070 Desktop | 1LZVY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0XY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1WY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1LZWY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1XY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0VY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M0WY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M2VY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1LZTY23 | New in Box |
| Dell OptiPlex 3070 Desktop | 1M1VY23 | New in Box |

IN RE: LEGACY GLOBAL SPORTS, L.P., ET AL.
BANKRUPTCY NOS. 20-11157-JEB; AND 20-11351 THROUGH 20-11376-JEB
*Jointly Administered Cases*

SCHEDULE 7 TO

MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING SALE
OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS BY PUBLIC ONLINE
AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS

## VEHICLES

| State | Year | Make | Model | VIN |
|---|---|---|---|---|
| California | 2018 | Ford | Focus | 1FADP3K25JL224464 |
| Carolina | 2002 | Acura | 3.2 CL | 19UYA42402A004460 |
| Carolina | 2005 | Honda | Accord | 1HGCM715X5A024569 |
| Carolina | 2011 | BMW | 328 | WBAPH7C59BE460073 |
| Carolina | 2001 | Ford | Taurus | 1FAFP55U01G200759 |
| Carolina | 1999 | Toyota | Sienna | 4T3ZF13C3XU148036 |
| Carolina | 2006 | Buick | Lucerne | 1G4HD57256U221358 |
| Carolina | 2004 | Honda | Pilot | 2HKYF18414H576395 |
| Carolina | 1996 | Honda | Civic | 1HGEJ6120TL020940 |
| Delawarea | 2007 | Ford | Ranger | 1FTYR10D87PA91621 |
| Florida | 2016 | Volkswagen | Jetta | 3VW267AJ3GM296787 |
| Florida | 2016 | Volkswagen | Jetta | 3VW267AJ4GM219250 |
| Maine | 2012 | Subaru | Forester | JF2SH63639G700850 |
| Maine | 2007 | Dodge | Grand Caravan | |
| Minnesota | 2010 | Toyota | Corolla | 2T1BU4EE8AC486606 |
| Minnesota | 2009 | Dodge | Journey | 3D4GH57VX9T598042 |
| New Hampshire | 2007 | Ford | Fusion | 3FAHP07Z17R172962 |
| New Hampshire | 2005 | Toyota | Sienna | 5TDZA23C95S384046 |
| New Hampshire | 2011 | Mitsubishi | Lancer | JA32U2FU4BU009717 |
| New Jersey | 2003 | Chevrolet | Trailblazer | 1GNET16S536201736 |
| New Jersey | 2013 | Chevrolet | Spark | KL8CC6S92DC507689 |
| New York | 2016 | Nissan | Sentra | 3N1AB7AP0GL682140 |
| Canada | | Nissan | Sentra | 3N1AB7AP2FY315645 |

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 7** |
| **LEGACY GLOBAL SPORTS, L.P.,**[1] | ) | **Case No. 20-11157-JEB; and** |
| | ) | **20-11351 through 20-11376** |
| Debtor. | ) | *Jointly Administered Cases* |
| | ) | |

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER AUTHORIZING
PAYMENT TO AUCTIONEER FOR SERVICES RELATIVE TO PUBLIC AUCTION**

Now comes Harold B. Murphy, the Trustee in Bankruptcy (the "Trustee") of the

bankruptcy estate (the "Estate") of Legacy Global Sports, L.P. ("LGS") and each of the related

above-captioned debtors (the "Debtors"), and moves this Court for authority to make payment to

his court-authorized auctioneer, Paul E. Saperstein Co., Inc. (the "Auctioneer") for services

rendered and expenses incurred relative to the public auction sale (the "Public Sale") conducted

by the Auctioneer with respect to the Estate's right, title and interest in in all or substantially all

of the Estates' assets, properties and rights, other than the Excluded Assets (as defined in the

Sale Motion, referenced below) (collectively, the "Assets").

---

[1] The affiliated debtors, along with the last four digits of each debtor's federal tax identification number, are as follows: (i) Legacy Global Sports, L.P., EIN #2834; (ii) LGS Management, LLC, EIN # 5401; (iii) LGS Manufacturing LLC, EIN #5305; (iv) Legacy Global Lacrosse LLC, EIN # 0161; (v) LGS Logistics LLC, EIN #6244; (vi) LGS Team Sales LLC, EIN # 6484; (vii) Premier Sports Events LLC, EIN #5407; (viii) Massachusetts Premier Soccer LLC d/b/a Global Premier Soccer, EIN # 6290; (ix) Maine Premier Soccer LLC, EIN #0740; (x) Mass Premier Soccer in New Hampshire, LLC, EIN #2958; (xi) Florida Premier Soccer LLC, EIN #0702; (xii) New York Premier Soccer LLC, EIN # 27-2451104; (xiii) Jersey Premier Soccer LLC, EIN # 0501; (xiv) GPS in Vermont LLC, EIN #3359; (xv) Rhode Island Premier Soccer LLC, EIN #2841; (xvi) Carolina Premier Soccer LLC, EIN # 46-1594047; (xvii) Georgia Premier Soccer LLC, EIN #1982; (xviii) Global Premier Soccer Puerto Rico LLC, EIN #1857; (xix) Global Premier Soccer Canada LLC, EIN # 6291; (xx) Global Premier Soccer Oregon, EIN #8242; (xxi) Global Premier Soccer California LLC, EIN #7811; (xxii) Global Premier Soccer Missouri, LLC, EIN #2782; (xxiii) Global Premier Soccer Connecticut, EIN # 6400; (xxiv) Global Premier Soccer Delaware, EIN # 4703; (xxv) Global Premier Soccer Michigan LLC, EIN # 0533; (xxvi) Global Premier Soccer Minnesota LLC, EIN # 5588; and (xxvii) Global Premier Soccer Ohio LLC, EIN #0022.

The Auctioneer's services are set forth in further detail herein and in the *Application for Fee and Affidavit* (the "Fee Application"), filed concurrently herewith.  In further support of this motion (the "Motion"), the Trustee submits the following:

### Background

1.      On May 20, 2020, certain creditors filed an involuntary petition for relief against LGS under Chapter 7 of the United States Bankruptcy Code ("Bankruptcy Code"), and an order for relief was entered against LGS on June 23, 2020.

2.      On June 23, 3030, each of the remaining Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

3.      Harold B. Murphy is the duly appointed Chapter 7 trustee of the Debtors.

4.      As of the Petition Date, the Debtors maintained an interest in the Assets.

### Public Auction Sale

5.      On August 21, 2020, the Trustee filed the *Motion by Chapter 7 Trustee for Entry of Order Authorizing Sale of All or Substantially All Assets of the Debtors by Public Online Auction Sale Free and Clear of Liens, Claims, Encumbrances and Interests* (the "Sale Motion.") By the Sale Motion, the Trustee sought to sell the Estate's right, title and interest in the Assets by the Public Sale.

6.      Simultaneously with the Sale Motion, the Trustee filed an *Application of Chapter 7 Trustee to Employ Paul E. Saperstein Co., Inc. as Auctioneer to Conduct Online Public Auction Sale of Assets (*the "Application") in order to employ the Auctioneer to conduct the Public Sale.  A copy of the order authorizing the Auctioneer's employment is attached as Exhibit A.

7.    On September 29, 2020, the Court entered an order authorizing the Trustee to conduct the Public Sale.

8.    The Trustee conducted the Public Sale on October 1, 2020 at 11:00 a.m.  The Public Sale was attended by multiple interested parties.

9.    The Assets were offered in lots and in various combinations of lots. The Trustee accepted the highest bids for the Assets as follows:

| | | |
|---|---|---|
| (i) | Legacy Global Sports "entirety" assets consisting of, among other things, intellectual property, domain names, social media accounts, customer lists, accounts relievable, licenses, and permits (the "Entirety Assets") | **$240,000** |
| (ii) | PSE Housing Booking Platform, including proprietary applications and interface software | **$370,000** |
| (iii) | Legacy Global Sports Registration System | **$  2,500** |
| (iv) | Interest in LGS Europe AB | **$ 30,000** |
| (v) | Interest in Swedsport Tournament & Event AB | **$  2,500** |
| (vi) | 19 Laptops and Desktops | **$  7,000** |

10.    The sale price for the Assets aggregated $652,000; however, following the auction sale, the high bidder for the Entirety Assets, the Legacy Global Sports Registration System and the interest in Swedsport Tournament Event AB declined to close on the sale and forfeited his $20,000 deposit.  The second highest bidder for the Entirety Assets also declined to close on a sale.  No registered bidder made an offer on the vehicles owned by the Debtor.  As such, the total in sale proceeds collected by the Trustee in connection with the Public Sale, not including the $20,000 forfeited deposit, is $407,000.

11.    The Trustee is in the process of conferring with former employees of the Debtor regarding the unsold assets and is exploring a second auction or a private sale with respect to the

unsold assets. The Trustee is also in the process of abandoning the vehicles to the extent that relief from the stay has not been granted with respect to the vehicles.

## Relief Requested

12. In accordance with the Application filed concurrently herewith, the Trustee seeks authority to pay to the Auctioneer the sum of $29,190.05, which includes (i) the Auctioneer's commission in the amount of $22,200 as provided in MLBR 6004-1(d)(8) for services rendered relative to the Public Auction, and (ii) reimbursement of actual and necessary expenses totaling $6,990.50.

13. The Auctioneer's expenses are detailed in the Fee Application, and consist of advertising costs and labor costs. The Auctioneer's actual expenses were less than 50% of the amount estimated in the Application. The Auctioneer's labor costs, in the amount of $3,900, included 52 hours of consultation and auction preparation, included conferring with numerous potential bidders regarding the assets they were interested in purchasing, gathering information regarding the assets, including multiple vehicles scattered across multiple states, many in unknown locations, traveling to view vehicles and potential assets located in Maine that were not listed on the Schedules, and working extensively with the Trustee to most effectively categorize the assets available for sale at the Public Auction. The Auctioneer advertised the Public Sale on its website, www.pesco.com, in the Boston Herald, IP Watchdog, Facebook ads, internet ads and electronic mail blasts. Eight (8) qualified bidders were present for the Public Sale.

14. The services of the Auctioneer were essential to the Trustee's efforts with respect to the marketing and liquidation of the Assets. The Trustee is holding sufficient funds in the Estate from the proceeds of the Assets to pay the amounts sought by the Auctioneer.

15. The Trustee does not anticipate any opposition to this Motion.

4

## Notice

16.     The Trustee shall serve this Motion upon the United States Trustee, the taxing

authorities, and all parties who have requested notices in this case.   The Trustee shall serve

notice of any hearing date and objection deadline with respect to the Motion upon the United

States Trustee, all parties who have requested notices, and all creditors.

WHEREFORE, the Trustee respectfully requests that this Court enter an order

authorizing the Trustee to pay the Auctioneer the sum of $29,190.05, consisting of $22,200 in

commission and $6,990.50 in expenses, in accordance with the Application, and for any such

additional relief that the Court deems just and proper.

> HAROLD B. MURPHY,
> CHAPTER 7 TRUSTEE
>
> By his counsel,
>
>    /s/ Kathleen R. Cruickshank
> Harold B. Murphy BBO#362610
> Kathleen R. Cruickshank BBO#550675
> MURPHY & KING, Professional Corporation
> One Beacon Street
> Boston, MA  02109
> Tel: (617) 423-0400-Fax: (617) 556-8985
> Email: kcruickshank@murphyking.com

Dated: January 28, 2020
788948

5

# EXHIBIT 4

 **Murphy&King** Professional Corporation
Counsellors at Law

**CHARLES R. BENNETT, JR.**
Direct Dial: 617-226-3408
Email: cbennett@murphyking.com

June 14, 2021

*VIA FEDERAL EXPRESS
AND FIRST CLASS MAIL*

John St. Pierre
3 Bradley Lane
North Hampton, NH  03862

**Re:**      **Acceleration of Promissory Note and Demand for Payment**

Dear Mr. St. Pierre:

This firm and the undersigned are counsel to Harold B. Murphy as he is Trustee (the "Trustee") of the Chapter 7 Bankruptcy Estate of Legacy Global Sports LP ("Legacy Sports"). On behalf of the Trustee, reference is hereby made to a certain Promissory Note dated March 4, 2016, in the principal amount of $900,000 payable to Legacy Global Sports LP (the "Note"). Pursuant to the Note, the full principal amount plus accrued interest is due and payable within ninety (90) days upon the occurrence of certain events, including sale of all or substantially all of the assets of Legacy Sports. On October 1, 2020, substantially all of the assets of Legacy Sports were sold. More than ninety (90) days has elapsed since the sale occurred, and you have failed and neglected to pay in full the principal and accrued interest due thereon. Accordingly, DEMAND is hereby made for payment of the outstanding principal balance of $900,000 plus accrued interest from and after March 4, 2016.

Thank you for your prompt payment.

Very truly yours,

Charles R. Bennett, Jr.

cc:    Jennifer Doran

798451

www.murphyking.com

One Beacon Street
Boston, MA 02108-3107
Tel: 617.423.0400
Fax: 617.423.0498

150 E. 58th Street, 22nd Floor
New York, NY 10155
Tel: 212.631.0223
Fax: 212.624.0223

# EXHIBIT 5



**HINCKLEY ALLEN**

650 Elm Street
Manchester, NH 03101-2596

p: 603-225-4334   f: 603-224-8350

**Christopher H.M. Carter**
ccarter@hinckleyallen.com
Direct Dial: 603-545-6104

July 20, 2021

<u>**Via Email**</u>
*cbennett@murphyking.com*

Charles R. Bennett, Jr.
Murphy & King
One Beacon Street
Boston, MA  02108-3107

**Re:   Legacy Global Sports, L.P.**

Dear Attorney Bennett:

As you know, this firm represents John St. Pierre.  We received your letter dated June 14, 2021 in which you made demand for payment of $900,000 plus interest under a Promissory Note dated March 4, 2016 (the "Note") given by Mr. St. Pierre in favor of Legacy Global Sports, L.P. (the "Debtor").  Your letter states that the Note is due and payable because of the alleged sale of "substantially all of the assets" of the Debtor.  Mr. St. Pierre denies any and all liability under the Note.

Mr. St. Pierre was the founder of the Debtor and its former President.  The Note was part of an equity transaction designed to incentivize Mr. St. Pierre to grow the Debtor's business.  In 2016, Mr. St. Pierre issued the Note in exchange for his purchase of six percent (6%) of the equity of the Debtor.  The Debtor loaned $900,000 to Mr. St. Pierre to fund the purchase in exchange for the Note.  The Debtor raised $5,000,000 in 2016 as part of the transaction under which Mr. St. Pierre issued the Note.

In 2018, Jefferson River Capital acquired an interest in the Debtor.  It froze out Mr. St. Pierre and destroyed the Debtor's business.  The Debtor was the subject of an involuntary bankruptcy petition that you now are administering.

The Note provides that it is payable upon, *inter alia*, "the sale of all or substantially all of the assets of Holder [Debtor] to a bona fide third party for value."  The Debtor's assets were not sold for value to a bona fide third party purchaser.  Harold B. Murphy, the Chapter 7 Trustee appointed to administer the Debtor's assets (the "Trustee"), held a public auction of the Debtor's

Charles R. Bennett, Jr.
July 20, 2021
Page 2

assets.  The assets were sold in six (6) lots.[1]  Two (2) of the lots had no bidder, and the total amount that the Trustee obtained from the assets was $407,000, less approximately $30,000 payable to the auctioneer.  In total, the Trustee netted less than $370,000.  *See* Motion by Chapter 7 Trustee for Entry of Order Authorizing Payment to Auctioneer for Services Relative to Public Auction, filed on January 28, 2021 [Dkt. 229] (the "Auction Report").

Further, the Auction Report states that the Trustee was "exploring a second auction or a private sale with respect to the unsold assets.  The Trustee is also in the process of abandoning the vehicles to the extent that relief from stay has not been granted with respect to the vehicles."  *See* Auction Report at ¶11.  As such, the Trustee acknowledges that he did not sell all of the Debtor's assets, and that he planned to abandon assets as well.

The sale of some of the worthless remains of a business, once valued in excess of $20 million in 2018, prior to the unlawful freeze-out of Mr. St. Pierre, does not constitute the sale of assets to a bona fide third party for value.  No single party purchased the assets, and not all of the Debtor's assets were sold.  The Debtor's intellectual property and goodwill, once its most valuable assets, did not even find a buyer, and certainly not a buyer for the value that these assets once had.  The $370,000 that the Trustee netted is less than one-half of the amount of the Note that Mr. St. Pierre gave for only four and one-half percent (4.5%) of the Debtor's equity (based on the 2016 valuation of $15 million).  For these reasons, the bankruptcy auction of some, but not all, of the Debtor's remaining assets to multiple buyers at a fire sale does not trigger repayment under the Note.

Mr. St. Pierre reserves all of his rights with respect to this matter.

Sincerely,

Christopher H.M. Carter
CHMC/smc

Cc:     Client

#61172892

---

[1] The most valuable lot was the PSE housing platform, which sold for $370,000.  The Trustee was unaware of this asset until Mr. St. Pierre told him of its existence during a phone call among Mr. St. Pierre, Mr. Murphy and Ms. Doran.  Mr. St. Pierre reserves his rights in this regard.